Argued April 8, affirmed June 16, 1925.

# ORBY C. CRAVEN v. JOHN CHARLES WRIGHT.

## (236 Pac. 1043.)

**Money Received—Trover and Conversion—Trover or Money Had and Received will Lie Where Check Given for One Purpose has Been Diverted to Different Purpose.**

1. Where check has been given to a person for one purpose and diverted to a different purpose, trover may be maintained by maker for the conversion of money paid thereon, or maker may bring an action for money had and received.

**Money Received—Subscriber for Corporate Stock Could not Recover, Against Trustee, Subscription Funds Which were Diverted.**

2. Where corporation, financially involved, was being reorganized, check for stock in new corporation given before organization, and which was turned over to special trustee and deposited by him in account, subsequently used for payment of debts, whereas no stock in new corporation was issued, action by maker of check for money had and received, against trustee, would not lie, in absence of any showing that trustee had received moneys to which he was not entitled, and which in equity and conscience belonged to plaintiff.

See (1) 27 Cyc. 862.   (2) 27 Cyc. 845.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. B. G. Skulason.*

For respondent there was a brief over the name of *Messrs. Hodges & Gay,* with an oral argument by *Mr. C. M. Hodges.*

RAND, J.—Plaintiff commenced this action against L. D. Johnson and John Charles Wright to recover,

---

1. Trover for conversion of money, note, 15 **Ann. Cas.** 1011. See, also, 26 **R. C. L.** 1103.

2. Right to maintain action for money had and received in absence of privity of contract, see note in **Ann. Cas.** 1913A, 477. See, also, 2 **R. C. L.** 778.

as money had and received, the sum of $1,500 alleged to have been paid to Johnson by plaintiff for the purchase by him for plaintiff of stock in a corporation not then formed, and which it is alleged was wrongfully diverted to another purpose by the defendants. The complaint contains the necessary averments to sustain an action for conversion of the money, but expressly states that plaintiff waives the tort and sues upon an implied contract for the return of the money. At the close of the testimony plaintiff moved for a directed verdict against both defendants. The motion was overruled and the jury returned a verdict against the defendant Johnson and in favor of the defendant Wright. Plaintiff assigns as error the overruling of his motion against Wright, and this is the sole error upon which plaintiff relies upon this appeal.

It appears from the testimony of the plaintiff that plaintiff gave Johnson a check for $1,500, with the name of the payee, at Johnson's request, left blank, to be applied by Johnson in the purchase of stock for plaintiff in the Northwest Battery and Electric Company, a corporation not then, but shortly thereafter, organized, and that Johnson inserted in the check the name of the Northwest Battery Service Company, as the payee thereof, and delivered the check to the defendant Wright, who presented it for payment and deposited the proceeds thereof, with other moneys, in the Canadian Bank of Commerce of Portland, Oregon, to the credit of John Charles Wright, trustee, and paid out the same as hereinafter stated, and that the stock has never been delivered to the plaintiff.

1. Where a check has been given to a person for one purpose and it has been diverted to a purpose different from that for which it was given, an ac-

tion in trover may be maintained by the maker thereof for the conversion of the money paid thereon: Bowers on Conversion, § 19. The maker in such case has an election of remedies. He may bring an action in trover for the conversion of the check, or an action for money had and received: *Comstock* v. *Hier,* 73 N. Y. 269 (29 Am. Rep. 142).

2. The Northwest Battery Service Company was a corporation that was engaged in the sale of electric motor batteries in Portland, Oregon. Plaintiff was a stockholder thereof. Johnson was the president and general manager of the corporation. The corporation was heavily involved and found difficulty in financing its business. It had ordered a shipment of batteries for which it was obliged to pay, upon arrival at Portland, the sum of $11,352.80 and freight charges thereon amounting to $1,328.29. The evidence shows that it did not have the money to meet this obligation. Wright was not a stockholder of the corporation, nor in any manner interested therein. To tide itself over this difficulty it was proposed by the old corporation to organize a new corporation to be known as the Northwest Battery and Electric Company, and that corporation was formed, having an authorized capital stock of $50,000. Of this stock, plaintiff subscribed for $1,500 and Wright for $1,450. Wright delivered his check for that amount and was requested by the attorney of the old company to act as trustee for the new company, and to deposit its moneys in his own name, as trustee. Acting upon this request, Wright deposited in the Canadian Bank of Commerce, in his own name as trustee, the $1,450 paid in by himself, the $1,500 paid by plaintiff, and other moneys,—in all amounting to $15,204. Going to make up the total amount thus deposited, Wright advanced, of his own money, $2,000 additional and

pledged his credit to the bank for a considerable amount, a small part of which has not yet been paid.

There is no evidence of a transfer by the old company to the new company of its assets, but the evidence does show that the business was conducted in the name of the new company in the same quarters that had formerly been occupied by the old, and that the assets of the old company were used by the new company in the conduct of its business. No corporate records were introduced, and there was nothing to show how the transfer was made, nor what obligations were assumed by the new company. No stock in the new company was issued to anyone, and about eight months after its organization it became bankrupt and both plaintiff and Wright lost their entire investment. The shipment of batteries, upon its arrival at Portland, and the freight charges thereon, were paid for by Wright out of the money thus deposited, and all the remainder of the deposit was paid out in the business. The evidence clearly shows these payments and the items for which the money was paid, and that all of said payments were made by Wright in entire good faith. Upon the organization of the new company, plaintiff, whose occupation was that of repairing and building batteries, and Wright became employees of the new company at a small salary. Wright left the employment of the new company immediately upon having paid out the last of the money that had been delivered to him in trust. Plaintiff remained until the end. There was no testimony that plaintiff was induced to subscribe for or to pay the amount sued for by anything said or done by Wright. In fact, plaintiff testified that he had no conversation with Wright concerning said matters, nor is there any evi-

dence tending to show any obligation upon the part of Wright to reimburse plaintiff.

In an action for money had and received, before plaintiff could be entitled to recover against Wright, he was bound to establish that Wright had received moneys to which he was not entitled and which in equity and good conscience belonged to the plaintiff. This he wholly failed to do. The jury returned a verdict in favor of Wright, and we have no power to disturb it.

For these reasons the judgment appealed from is affirmed.                  AFFIRMED.

McBRIDE, C. J., and COSHOW, J., concur.

Mr. Justice BURNETT concurs in the result.