## OKLAHOMA STATE BANK OF ADA v. HANOVER FIRE INS. CO. et al.

No. 22333. Sept. 11, 1934.

Rehearing Denied Oct. 2, 1934.

L. H. Harrell, Robert S. Kerr, and Aubrey M. Kerr, for plaintiff in error.

Rittenhouse, Lee, Webster, & Rittenhouse and McKeown & Green, for defendants in error.

RILEY, C. J. This is an appeal in an action commenced by plaintiff, Oklahoma State Bank of Ada, Okla., against the Hanover Fire Insurance Company to recover the proceeds of a draft issued by the fire insurance company in settlement of a policy issued by it covering an automobile.

The policy was issued to one L. P. Shaw in the sum of $574. The automobile was mortgaged by Shaw to Lon T. Moore, doing business as the Moore Motor Company. The policy was made payable to L. P. Shaw and the Moore Motor Company as their interests might appear.

Plaintiff held the note and mortgage as security for the indebtedness of the Moore Motor Company to it. Loss occurred and the claim was adjusted by the insurance company, and it issued the draft in question in the sum of $555, payable to L. P. Shaw and Moore Motor Company. The draft was delivered by the local agent of the insurance company to the plaintiff. The Moore Motor Company or Lon L. Moore went to the bank and indorsed the draft where it was being held for the indorsement of the other payee, L. P. Shaw. On September 19, 1928, Shaw went to the bank, and upon being requested to indorse the draft he raised some question as to the correctness of the amount of the draft, and requested permission to take the draft to Lon L. Moore (Moore Motor Company) to talk the matter over with him, with the promise that he would return same to the bank and indorse it. Instead of complying with his promise Shaw took the draft to the First National Bank of Stratford, where he indorsed it and obtained the money thereon, which he kept. The draft was made payable through the National Bank of Commerce in Chicago, Ill.

Plaintiff notified the Hanover Insurance Company, before the draft arrived in Chicago, of the manner in which Shaw had obtained possession of the draft, and requested the insurance company not to pay it. The insurance company at first refused to honor the draft, but upon being advised by the First National Bank of Stratford that it was a holder in due course for value and without notice of any infirmity, the insurance company paid the draft and the First National Bank of Stratford received its money.

Plaintiff commenced this action against the insurance company alone, alleging that it had not only notified the insurance company, but that it had also notified the First National Bank of Stratford before it paid the money to Shaw, of the fraudulent manner in which Shaw had obtained possession of the draft, and that it had requested it not to pay the money on the draft to Shaw, and alleging that Shaw was hopelessly insolvent.

Thereafter, on motion of the insurance company, the First National Bank of Stratford, L. P. Shaw and the Moore Motor Company were made parties defendant.

The cause was tried to a jury on the issue of whether or not the First National Bank was an innocent purchaser and holder in due course.

The court submitted that question only to the jury by special interrogatory as follows: "Was the First National Bank of Stratford an innocent purchaser and holder in due course on the draft in question? (Answer yes or no)." The answer of the jury was, "Yes." Judgment was rendered upon the finding for defendant insurance company and First National Bank of Stratford, and plaintiff appeals.

There is some evidence tending to prove that the First National Bank of Stratford had actual notice before it paid out its money to Shaw, or at least that it had informed plaintiff when called over the telephone that Shaw had not been at the bank with the draft. But there is also evidence tending strongly to prove that Shaw obtained possession of the draft on September 19, 1928, and cashed it at the Stratford Bank the same day. The records of the telephone call show it to have been made on September 20th. The records of the Stratford Bank show that they obtained the draft on September 19th. Their remittance sheet was introduced in evidence, and shows as to this particular draft that it was included in their remittances to their correspondent

bank in Oklahoma City on September 19, 1928. The evidence as to actual notice is at the most in 'conflict. It seems to be conceded that if the draft in question is a negotiable instrument and the Stratford Bank had no actual notice of the manner in which Shaw obtained possession of the draft from plaintiff, then plaintiff is not entitled to recover.

The evidence as to actual notice being in conflict, the finding of the jury against plaintiff is conclusive and binding on plaintiff.

It is contended by plaintiff that the instrument in question is nonnegotiable, and, therefore, no actual notice was necessary. Plaintiff requested the court to so instruct the jury, which request was denied. It is upon this theory that the appeal is predicated.

The face of the draft is:

"$550.00 Claim No. 87733 Chicago 14, 1928.

"To The Hanover Fire Insurance Company 1105-175 Jackson Boulevard, Chicago, Ill.

"Pay to the order of L. P. Shaw & Moore Motor Company, five hundred fifty-five dollars, dollars, in full payment, satisfaction, compromise and discharge of all claims for loss and damage by fire which occurred on the 4 day of August, 1928, to the property insured under policy No. A363 issued at Ada, Okla., Agency, and in consideration of said payment the policy is hereby cancelled and surrendered herewith.

"W. K. Maxwell, Agt.

"Payable through Chicago Trust Co., in Chicago, Chicago, Ill., U. S. A.

"No Protest.

"This draft must be indorsed by all parties in interest and if indorsed by an attorney, the original power of attorney or a certified copy of same must accompany draft to be filed with this company, prior to the presentation of draft for acceptance and payment."

On the back thereof, exclusive of indorsements, appears the following:

"Payee Must Sign This D'scharge.

"In consideration of the sum hereby paid, all claims and demands whatsoever against the Hanover Fire Insurance Company connected with the within mentioned claim for loss or damages are released, compromised, settled and forever discharged."

"Instruction Relative to Indorsement of Draft.

"Indorsement of this draft should be made by the payee as described in its face; if made by an attorney or other representa-

tive, properly certified evidence of authority must accompany draft or be filed with this company at its office in Chicago, Ill., prior to presentation of draft for acceptance and payment."

Plaintiff concedes that the statement, "in full payment, compromise and discharge of all claims for loss and damage by fire which occurred on the 4th day of August, 1928, to the property insured under policy No. A.363, issued at Ada, Okla., Agency," contained in the draft, did not render the draft nonnegotiable. But plaintiff does contend that the further statement, "and in consideration of said payment the policy is hereby canceled and surrendered herewith," of itself, did render said draft nonnegotiable.

Plaintiff further contends that the statement contained on the face of the draft that "this draft must be indorsed by all parties in interest" also rendered the draft nonnegotiable.

The latter contention appears to be without merit. No authorities are cited in support thereof, and we find none. The requirement is nothing more nor less than that provided by section 7711, C. O. S. 1921, which provides:

"Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing had authority to indorse for the others."

The draft being payable to the order of two payees not partners, the indorsement of both payees was required by law in order to transfer title.

The statement was not of such a nature as in any respect to qualify or make uncertain or conditional the promise contained in the draft.

The question involved in the second contention, while nearer the line separating negotiable from nonnegotiable instruments, is not sufficient to render the draft nonnegotiable. It is well settled that wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make it subject to the terms of the contract, as distinguished from a reference imputing merely that the extrinsic agreement was the origin of the transaction, or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed. 3 R. C. L. 883.

It is well settled that a note or bill, otherwise negotiable, is not rendered nonnegotiable by the insertion therein of a reference to the transaction out of which it arose,

or the recital of the consideration for which it was given. Slaughter v. Bk. of Bisbee (Ariz.) 154 P. 1040; Peoples Bank v. Moore (Ala.) 78 So. 789; Ridgely Nat. Bank v. Patton, 109 Ill. 479.

In Cota v. Buck, 7 Metc. (Mass.) 588, it is said:

"The true test of the negotiability of a note seems to be whether the undertaking of the promissor is to pay the amount at all events, at some time which must certainly come, and not out of a particular fund, or upon a contingent event. If it were payable on a contingency or out of a particular fund, it would not be negotiable."

By section 7673, C. O. S. 1921, indication of a particular fund of which payment is to be made does not destroy the unconditional promise to pay.

In Welch. et al. v. Owenby, 73 Okla. 212, 175 P. 746, it is held that the negotiability of a promissory note is not destroyed by a subjoined statement that the note is given in payment for a certain stallion, "which is delivered to maker with agreement that stallion shall remain the property of payee, with full power of disposition, without notice, until the note is fully paid."

The note there in question contained the statement that the stallion (describing it) "and this day delivered to the maker of this note," etc.

In the instant case the draft recites that it is given in full payment, etc., of the policy (describing it), and then recites that "in consideration of said payment the policy is hereby canceled and surrendered herewith." There is nothing therein expressly or by necessary implication making payment contingent upon cancellation and surrender of the policy.

The recitation contained in the Welch note, supra, is much more definite and more clearly refers to a contemporary agreement than that contained in the draft here under consideration. It was therefore stated: "There is nothing in this subjoined statement that makes any of the provisions of the note conditional or qualifies them." Likewise there is nothing in the subjoined statement contained in the draft that makes any of the provisions of the draft conditional or qualifies them.

The contention of plaintiff in this regard cannot be upheld. It follows that the judgment rendered upon the special finding of the jury must be, and is, affirmed.

SWINDALL, McNEILL, BAYLESS, and WELCH, JJ., concur.