Argued October 17, 1956, reargued February 6, reversed and
remanded December 18, 1957, petition for rehearing
denied January 18, 1958

# UNITED FINANCE CO. *v.* ANDERSON ET AL

319 P. 2d 571

*Oglesby H. Young* and *Joseph Larkin,* of Portland, argued the cause for appellants. With them on the brief were Koerner, Young, McColloch & Dezendorf and Frank H. Spears, Portland.

*Denton G. Burdick, Jr.,* Portland, argued the cause for respondents. With him on the brief were Cake,

Jaureguy & Hardy, and Jonathan U. Newman, Portland.

McALLISTER, J.

This is an action in conversion brought by United Finance Co., a corporation, as plaintiff, against a co-partnership known as Anderson Willys Co. to recover the proceeds of two checks drawn by plaintiff. The complaint alleges that defendants are engaged in the business of selling and distributing automobiles. When the transactions involved in this case occurred, the business was being conducted by a former partnership known as Cohen-Anderson Motor Co., of which firm defendants were partners. Since defendants have succeeded to the rights and liabilities of Cohen-Anderson Motor Co., we will for convenience refer to the defendants as Cohen-Anderson.

At the conclusion of plaintiff's case, the court denied the motion of defendant for a nonsuit. After both parties had rested the case was submitted to a jury which returned a verdict for defendants. Thereafter the court allowed plaintiff's motion for a judgment notwithstanding the verdict and entered judgment in favor of plaintiff for the full amount of said checks with interest and costs. From that judgment defendants have appealed, assigning as error the denial of their motion for a nonsuit and the granting of plaintiff's motion for a judgment notwithstanding the verdict.

Plaintiff's first cause of action is based on the following transaction. On November 7, 1949, Main Avenune Motors, Inc., the Willys dealer at Gresham, entered into a conditional sales contract by which it agreed to sell and one Leon L. Olmstead agreed to purchase a 1950 Willys station wagon, serial no. 108504.

On the same day Main Avenue assigned said contract to United Finance with recourse. On November 8, 1949, United Finance in consideration for the assignment to it of said contract, drew and delivered to Main Avenue its check in the sum of $1,400. The check was drawn payable to the order of Main Avenue Motors, Inc. and Cohen-Anderson Motor Co. On November 9, 1949, Main Avenue endorsed said check and delivered it to Cohen-Anderson and on November 10, 1949, Cohen-Anderson endorsed and cashed said check.

The check bore on its face the following memorandum:

"This check is in full payment of items stated hereunder evidence of which consists of endorsement on back

Description
1950 Willys Station Wagon
Model 4-63
Serial No. 108504
Motor No. U-107171"

This memorandum was printed except for the last four lines describing the vehicle which were typewritten.

Plaintiff's second cause of action is based on the following similar transaction. On November 9, 1949, Main Avenue entered into a conditional sales contract by which it agreed to sell and one A. W. Baker agreed to purchase a 1950 Willys pickup, serial no. 46587. On the same day Main Avenue assigned said contract to United Finance with recourse. On November 10, 1949, United Finance in consideration for the assignment to it of said contract, drew and delivered to Main Avenue its check in the sum of $1,470. This check was drawn payable to the order of Cohen-Anderson

Motor Co. On November 13, 1949, Main Avenue delivered said check to Cohen-Anderson and on November 14, 1949, Cohen-Anderson endorsed and cashed said check.

The check bore on its face the following memorandum:

"This check is in full payment of items stated hereunder evidence of which consists of endorsement on back

Description
1950 Willys Pickup
Motor No. 4T44594
Main Avenue Mtrs."

The last line of the memorandum on this check reading "Main Avenue Mtrs." had been written in ink.

It was stipulated by the parties that in return for said checks Cohen-Anderson delivered to Main Avenue two different motor vehicles than the motor vehicles described on the face of the checks.

Plaintiff bases its case on the following rule stated in *Craven v. Wright,* 114 Or 692, 693, 236 P 1043:

"Where a check has been given to a person for one purpose and it has been diverted to a purpose different from that for which it was given, an action in trover may be maintained by the maker thereof for the conversion of the money paid thereon: Bowers on Conversion, § 19. The maker in such case has an election of remedies. He may bring an action in trover for the conversion of the check, or an action for money had and received: Comstock v. Hier, 73 N.Y. 269 (29 Am. Rep. 142)."

In arguing that the above rule is applicable, plaintiff relies entirely on the memorandum appearing on the face of the checks.

We believe the rule of the Craven case does not apply for two reasons. First, because the check was not given by plaintiff to Cohen-Anderson, and, secondly, because no instructions of any kind limiting the use of the check were given by plaintiff to Cohen-Anderson. Except for the checks themselves, there is no pleading or proof of any notice or other communication between Cohen-Anderson and plaintiff regarding these checks or regarding the transaction between plaintiff and Main Avenue. For the reasons hereinafter discussed, we think the memorandum appearing on the checks, by itself, did not restrict their use in the hands of a holder in due course. We think this case turns on whether the checks were negotiable and whether Cohen-Anderson was a holder in due course thereof.

We pause to point out that this case is distinguished by a remarkable lack of evidence concerning the transactions which resulted in this action. The plaintiff offered no evidence except that tending to prove the essential elements of a conversion based solely on its theory of the legal effect of the memorandum appearing on the checks. The result is a paucity of evidence which leaves unanswered some interesting questions of fact concerning these transactions.

Before directing our attention to the memorandum on the checks we will summarize the plaintiff's contentions as to the legal effect thereof. Plaintiff contends that, as a matter of law, the memorandum on the face of the checks (a) constituted a direction to Cohen-Anderson as to the application of the checks; (b) bound Cohen-Anderson to apply the checks as directed; (c) constituted notice to Cohen-Anderson that plaintiff delivered the checks to Main Avenue to be used only to pay for the motor vehicles described

on the checks; (d) constituted notice to Cohen-Anderson that the title of Main Avenue to the checks was defective; and (e) made it impossible for Cohen-Anderson to become a holder in due course of the checks.

We next consider whether the memorandum appearing on the face of the checks rendered the checks non-negotiable. These checks were in the usual form and unless qualified by the memorandum, contained an unconditional order to pay a sum certain in money. ORS 71.003[①] provides that an unqualified order to pay is unconditional although coupled with "a statement of the transaction which gives rise to the instrument." The controlling question is whether the memorandum added a condition to the otherwise unconditional order to pay a sum certain in money and thus destroyed the negotiability of the checks.

In *Page v. Ford,* 65 Or 450, 452, 131 P 1013, this court held a note negotiable which contained on the margin the following memorandum:

> "This note is secured by mortgage of even date given to secure the balance of the purchase price of the property described in said mortgage."

In *Christian Brotherhood v. Graf,* 137 Or 638, 643, 1 P2d 596, this court also held a note negotiable which bore on the back thereof the following notation:

> "This note is given to apply on the purchase price of land in township 18 * * * and more particularly described in mortgage made by the maker of this note dated January 19, 1924."

In *Voges Motor Co. v. Ward* (1929), 98 Fla 304, 123 So 785, 787, a promissory note in the usual form

---

① ORS 71.003 An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with:

\* \* \* \* \*

(2) A statement of the transaction which gives rise to the instrument.

\* \* \* \* \*

was held negotiable even though there appeared in the lower left hand corner a memorandum reading:

"This note is one of a series of 12 notes referred to in Conditional Sale Agreement, Chattel Mortgage, or Lease Agreement dated March 4, 1924, executed by the maker hereof covering BETHLEHEM Motor Vehicle No. G. N. 25097."

The court said that this memorandum was only a statement of the transaction which gave rise to the instrument and did not in any way indicate that the note was conditioned or controlled or its negotiability impaired by the contract.

In *Cotton v. John Deere Plow Co.* (1944), 246 Ala 36, 18 So2d 727, 728, negotiability of two notes was not affected by a recital thereon that they were given "for the purchase price or part of the purchase price of One Type W-Engine No. 1626 One 14 inch Hammer Mill," the court holding that such recital was merely a "statement of the transaction which gives rise to the instruments."

In *First Bank of Marianna v. Havanna Canning Co.*, 142 Fla 544, 195 So 188, the court held that a notation on a check reading, "For berries to be delvd us June 8th" did not impair the negotiability of the check. The court reviewed and cited numerous cases supporting its holdings and in conclusion said:

"In order to render a check non-negotiable by a notation made thereon, words must be employed which clearly show that the maker of the check intended the instrument to be burdened with the condition of the agreement * * * (citing cases)"

We quote from the opinion of the supreme court of Iowa in *Rubio Sav. Bank of Brighton v. Acme Farm Products Co.*, 240 Iowa 547, 37 NW2d 16, 19:

"On the face of the checks is printed: 'Endorsement: Guarantee delivery in good order, weight and

count merchandise listed opposite side.' Defendants contend this language makes payment conditional upon the delivery of the merchandise. We disagree. Paper non-negotiable by reason of its conditional character is commonly distinctly conditional in form with language such as—on condition that—if—in the event, etc. 10 C.J.S., Bills and Notes, § 86a, page 525. See Home State Bank v. Martin, 196 Iowa 1092, 195 N. W. 977. Defendants do not point to any specific language as expressly or impliedly supporting their contention. They argue merely that this is the tenor of these instruments. A like argument would be equally applicable to any check which refers to an executory consideration. The absence of any language in the instruments indicating payment was conditional upon delivery of the merchandise requires a conclusion to the contrary."

The following cases also hold that a memorandum stating that the instrument is in payment of described property does not affect the negotiability: *Slaughter v. Bank of Bisbee* (1916); 17 Ariz 484, 154 P 1040; *Coleman v. Valentin* (1917), 39 SD 323, 164 NW 67; *Con. Guaranty Corp. v. Peoples' Bus Lines* (1922), 31 Dela 595, 117 A 275; *American Surety Co. v. Federal Reserve Bank* (1939), 29 F Supp 940; *Anderson Nat. Bank v. Jacobson* (1940), 305 Ill App 169, 27 NE2d 296; and *Bost v. Block* (1945), 195 Okla 198, 156 P2d 610.

It is also held that a requirement on a check that the endorsement thereof should constitute a receipt for the sum named in the check does not affect its negotiability. In *Economy Fuse Co. v. Standard Elec. Co.,* 359 Ill 504, 194 NE 922, 925, the check bore the following statement, "The endorsement of this check constitutes a receipt in full of the following invoices," followed by a statement of the account covered by the

check. In considering the effect of such statement, the court said:

"The requirement placed on the back of a check that the endorsement thereof constitutes a receipt for the sum named on the face of the check does not affect its negotiability, nor does a mere recital of the transaction out of which the check arose. * * *"

In *Oklahoma State Bank of Ada v. Hanover Fire Ins. Co.*, 169 Okla 116, 36 P2d 43, 45, it was contended that a statement contained on the face of a draft requiring endorsement by the parties in interest rendered the draft non-negotiable. In disposing of such contention, the court said:

"Plaintiff further contends that the statement contained on the face of the draft that 'this draft must be endorsed by all parties in interest' also rendered the draft nonnegotiable.

"The latter contention appears to be without merit. No authorities are cited in support thereof, and we find none. The requirement is nothing more nor less than that provided by section 7711, Co. O.S. 1921, which provides: 'Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing had authority to indorse for the others.'

"The draft being payable to the order of two payees not partners, the indorsement of both payees was required by law in order to transfer title.

"The statement was not of such a nature as in any respect to qualify or make uncertain or conditional the promise contained in the draft."

Like the Oklahoma court, we can say that no authorities have been cited and we have found none holding that a requirement that endorsement of a check shall constitute a receipt for the sum named therein rendered the checks non-negotiable.

■ In accord with the foregoing authorities and numerous others of like import, we hold that the memorandum on these checks merely referred to the transaction giving rise to the instruments, and did not as a matter of law condition their use in the hands of a holder in due course. We think the memorandum is merely a recital of consideration, either executed or executory, namely, the sale of motor vehicles by Main Avenue to plaintiff. The memorandum is fairly susceptible of the construction that the consideration had been executed by the transfer of the motor vehicles by Main Avenue to plaintiff prior to delivery of the checks. If the memorandum is construed as contemplating transfer of the consideration after payment, there is nothing to suggest that payment is conditioned on such transfer. See Britton on Bills and Notes, § 13, 59.

Plaintiff does not argue that the checks involved were non-negotiable and tacitly admits their negotiability. Nevertheless, plaintiff urges a construction of the memorandum which would render the notes non-negotiable. Plaintiff urges us to construe the memorandum to mean that the checks are payable on condition that they be used by Main Avenue to purchase from Cohen-Anderson the motor vehicles described on the checks. Plaintiff was at liberty to place such a memorandum on the check and if it had, Cohen-Anderson would have taken the instruments subject to that condition. We cannot ascribe to the memorandum the meaning suggested by plaintiff and are not at liberty to revise the memorandum or import into it any meaning not clearly expressed thereby.

■ Instead of placing a memorandum on the checks restricting their use by Main Avenue to a specified purpose, plaintiff launched these negotiable instru-

ments into commercial channels and must bear whatever consequences may result from the voluntary adoption of that course. We do not think the memorandum is ambiguous but if it were, having been prepared by plaintiff, it should be construed most favorably to defendants. *U. S. Nat. Bank v. Erickson et al.*, 208 Or 141, 300 P2d 449 and *Herrold v. Hartley*, 144 Or 368, 24 P2d 338.

In *International Finance Corp. v. Philadelphia W. Drug Co.*, 312 Pa 280, 167 A 790, the court held a trade acceptance negotiable which bore the following notation, "Accepted for payment as per Reolo contract for amount and date shown hereon." We believe the following portion of the opinion of the supreme court of Pennsylvania is pertinent here:

> "It is well to restate some of the fundamental principles that underlie the law of negotiable instruments. Negotiable instruments are the chief medium of credit. As such their inviolability must be made as secure as possible. They must pass freely in the channels of commerce without embarrassment to their handlers though extrinsic matters unaffecting their integrity appear thereon. If any impediment arises in their course, it must spring from the instrument itself, and the danger signal must be so clear and certain that none may miss it. When doubt or uncertainty arises, it is resolved in favor of negotiability. Whenever an instrument shows on its face that it embraces all the elements of a negotiable one, its negotiability is presumed. No extrinsic evidence may be considered to show non-negotiability. Perth Amboy Trust Co. v. Modern School Assn., 154 A. 418, 9 N. J. Misc. 368 (1931); International Finance Co. v. Northwestern Drug Co. (D. C.) 282 F. 920, 923. The paper travels as a 'courier without luggage' until this presumptive freedom of transferability is clearly and definitely restrained by its own evi-

dent limitations; mere words of ambiguity will not restrain its course. There must appear on its face clear, certain, and manifest notice of its conditional character. * * *"

■ It is now settled in Oregon that a payee may be a holder in due course. This rule was adopted in *American Nat. Bank v. Kerley et al.,* 109 Or 155, 220 P 116 and followed in *First Nat'l Bank v. Noble et al.,* 179 Or 26, 168 P2d 354. See also *Topco, Inc. v. 1st Natl Bank of Portland,* 202 Or 32, 273 P2d 420.

ORS 71.191② defines a "holder" to include the payee of a bill who is in possession of it. In this case the complaint alleges that these checks were each made and delivered by plaintiff to Main Avenue in return for the assignment of a conditional sales contract and that Main Avenue endorsed and delivered to Cohen-Anderson the check for $1,400 and delivered to Cohen-Anderson the check for $1,470 which was payable to Cohen-Anderson alone. Thus, under the facts alleged in the complaint, both checks were negotiated to Cohen-Anderson, who as a payee in possession, was a holder of both checks. At the outset of the case it was stipulated that in return for the delivery of each check to it by Main Avenue, Cohen-Anderson delivered to Main Avenue a motor vehicle. It was thus stipulated that Cohen-Anderson was a holder of these checks for value.

■ ORS 71.059③ provides in part that every holder

---

② ORS 71.191 In this chapter, unless the context otherwise requires:

\* \* \* \* \*

"Holder" means the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof.

③ ORS 71.059 Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.

is deemed *prima facie* to be a holder in due course. We think that under the pleading and proof in this case, Cohen-Anderson must be deemed *prima facie* to be a holder in due course of these checks. In view of this presumption it is important to note that plaintiff did not plead or attempt to prove any facts tending to show that the title of Main Avenue to these checks was defective. Defect of title is defined by ORS 71.055④ and ORS 71.059 provides "that when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he   *   *   *   acquired the title as a holder in due course."

■ If the title of Main Avenue to these checks was defective, it was incumbent upon plaintiff to allege and prove facts showing such defective title. See *River Bros. v. C.F.T. Co., Inc.,* 124 Or 157, 264 P 368.

■ If the conditional sales contract were spurious because the motor vehicles described thereon were non-existent or if there were other facts which rendered the title of Main Avenue defective and if these facts had been pleaded and proved, the burden would have then shifted to Cohen-Anderson to prove that it was a holder in due course of these checks. See *Everding & Farrell v. Toft,* 82 Or 1, 150 P 757, 160 P 1160; *Bank of Jordan Valley v. Duncan,* 105 Or 105, 209 P 149; and *First State & Savings Bank v. Denn,* 124 Or 468, 263 P 71. Instead of pleading and attempting to prove that the title of Main Avenue to the checks was defective, plaintiff throughout the case was content to rely on its erroneous construction of the memorandum on the checks.

④ ORS 71.055 The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to fraud.

The jury returned a verdict for the defendants and judgment was entered thereon. Thereafter plaintiff moved for a judgment notwithstanding the verdict on the ground that the memorandum on the checks, as a matter of law, constituted a direction to Cohen-Anderson as to the application of the proceeds of the check. The court allowed this motion and we think this was error.

Reversed with instructions to vacate the judgment for plaintiff notwithstanding the verdict and to reinstate the judgment for defendant based on the verdict of the jury.