Argued March 12, affirmed August 6, petition for rehearing
denied September 3, 1958

# HOGAN ET UX *v.* ALUMINUM LOCK SHINGLE CORPORATION

329 P. 2d 271

*S. J. Bischoff,* Portland, argued the cause and filed briefs for appellant.

*Bartlett F. Cole,* Portland, argued the cause and filed a brief for respondents.

Before PERRY, Chief Justice, WARNER, McALLISTER and SLOAN, Justices.

WARNER, J.

This is an action for money had and received brought by plaintiffs, Arthur M. Hogan and his wife, Ruth Hogan (hereinafter called "the Hogans"), against the defendant, Aluminum Lock Shingle Corporation of America, an Oregon corporation, with its principal place of business in Portland, Oregon (hereinafter called "the Company").

The Hogans, at the time of the following transactions, were residents of Jefferson City, Missouri. It was there that they initially dealt with the Company, represented by its agent, one Devon.

On June 11, 1954, the Hogans first signed an order for $5,000 worth of defendant's merchandise. This gave the Hogans an exclusive distributorship for defendant's products in four Missouri counties. No claims are made as a result of this order which was accepted by the Company.

Thereafter, on June 16, 1954, and before receiving any merchandise covered by the first order, the Hogans signed a second order for $15,000 more of the Company's merchandise, which, if accepted by the Company, would have conferred on the Hogans exclusive distributor rights in four additional counties in the state of Missouri. The second order, like the first, was given to Mr. Devon, the Company's agent, for transmittal to defendant's head office, in Portland, Oregon. Coincident with the signing of the second order by the Hogans, they handed Devon their check for $3,000, which was to apply on the purchase price of the merchandise if the order was accepted. It is

this $3,000 which plaintiffs seek to recover in this action.

The order form executed by Mr. Hogan, in behalf of plaintiffs, was made subject to acceptance by the Company. This condition therein is set out as follows:

"This agreement shall not be subject to cancellation and is binding upon the Contractor's [Aluminum Lock Shingle Corporation of America] written acceptance hereof or upon the Contractor's performance. * * *"

The important and cardinal issue of fact was whether the Hogans withdrew or cancelled the order of June 16, 1954, before it was accepted by the company, either in writing or by partial performance. The jury resolved this in favor of the Hogans with a resultant judgment for $3,000, from which the Company appeals.

The Company's first assignment is the claim that the court erred in overruling its demurrer to the complaint. The prime objection being because the cause was pleaded by common counts. The pertinent allegations of the complaint read:

"That on or about the 16th day of June, 1954, at Jefferson City, Missouri, the defendant had received of and from the plaintiffs, for the use and benefit of the plaintiffs in connection with a proposed sale of aluminum shingles, the sum of $3,000.00 in money. That said money was paid to the defendant by the plaintiffs by giving the defendant a check for the sum of $3,000.00 and defendant received payment on said check in the sum of $3,000.00.

"That defendant still retains said money although frequently demanded by the plaintiffs and plaintiffs further allege that the defendant has no right, title or interest to the money and defendant ought not in equity and good conscience to retain said money."

Appellant cites the early cases of *Bowen v. Emmerson,* 3 Or 452, and *Buchanan v. Beck,* 15 Or 563, 16 P 422, as authority for its position. Notwithstanding the strong language found in Buchanan (15 Or 566, supra), "that the use of the general counts in assumpsit was wholly inconsistent with the theory of the Civil Code," this extreme position was overruled in *Keene v. Eldriedge,* 47 Or 179, 82 P 803, where both of these cases were reviewed and disapproved. This conclusion in Keene finds recent approval in *Snow v. Tompkins,* 205 Or 60, 64, 286 P2d 119, and we adhere to it.

■ The use of common counts in actions in assumpsit has many times since been employed with the approbation of this court. This is exemplified in *Sharp v. McCargar,* 114 Or 435, 441, 236 P 262; *Wagner v. Savage,* 195 Or 128, 145, 244 P2d 161; *Baker v. The First National Bank,* 206 Or 434, 439, 293 P2d 742. Thus, any lingering doubt as to the status of the Bowen and Buchanan cases as authority to the contrary is completely dissipated.

In all of the Oregon cases touching upon the subject of pleading assumpsit by common count (except *Waite v. Willis,* 42 Or 288, 70 P 1034), no demurrers were addressed to the complaint in the trial court, as did the appellant here. But we do not find that this court, even when referring to the absence of a demurrer in the lower court, has ever held that had the defendant so challenged the pleading in the court below, its demurrer would ipso facto be sustained because of the pleader's use of the common counts in assumpsit. Clearly, such is not the holding in the more recent case of *Snow v. Tompkins,* supra, where the subject of pleading by use of common counts is given extensive attention. In Waite the complaint pleaded common counts and was challenged by demurrer in

the lower court and there overruled. This order was sustained on appeal. Waite stands as authority for the sufficiency of such pleading and without the need of the fictional allegation of a promise to pay, as originally employed in the common-law pleading (42 Or at 289, supra).

It does not follow, therefore, that because the defendant here demurred to plaintiffs' complaint before answering it has necessarily acquired an advantage which committed the trial judge to sustain its demurrer.

*Johnson v. Hattrem,* 129 Or 32, 275 P 913, was an action for money had and received. It was there pleaded by common count. The court found that the complaint "clearly stated a cause of action" (129 Or 34). This was done, notwithstanding that our present re-examination of that complaint reveals that in its simplicity and directness of statement the complaint in that case states strikingly less than found in the complaint at bar. In approving the sufficiency of that pleading, Mr. Justice RAND, at p 34, observes:

> "* * * While under our Code the distinction between forms of action at law is abolished, it is the form only and not the substance of the action that has been abolished: * * *." (Citing cases)

In *Watkins v. Record Photo. Abst. Co.,* 76 Or 421, 149 P 478, Chief Justice MOORE, after citing § 1, LOL (now ORS 16.020), at p 424, says: "Though the forms have thus been abrogated, the substance of the common-law actions remains." Also see *W. L. Hughson Co. v. Northwestern Nat. Bank,* 126 Or 43, 46, 268 P 756.

■■ "Substance" is that which "gives it its essential nature" (Webster's New International Dictionary (2d ed)) and as the word is used in those cases, it comprehends all of the essential or material elements

necessary to sufficiently state a good cause of action, which make a complaint invulnerable to attack by general demurrer. *Webb v. State,* 27 Okl Cr 104, 224 P 991, 992; *State v. Gregory,* 198 Iowa 316, 198 NW 58, 60; Pierson v. Springfield Fire & Marine Ins. Co. (Del), 7 Houst. 307, 31 A 966, 968. In testing the sufficiency of a complaint in an action for money had and received certainly recourse is properly had to the common-law pleading of the action to discover what are the essential allegations to make it a sufficient statement in such a cause of action under our code.

In harmony with the foregoing conclusion is 1 CJS 1086, Actions § 39, where it is said:

"* * * The courts look to the substantial rights of the parties to determine the remedy irrespective of the form of the complaint, the cause being tried on the theory of its essential nature. Hence, if the facts alleged and proved are such as would have entitled plaintiff to relief under any of the recognized forms of action at common law, they are sufficient as a basis of relief, whatever it may be. * * *"

1 Am Jur 438, Actions § 47, is of the same import:

"* * * In all jurisdictions, however, whether the code practice has been adopted or whether the procedure is based upon the common-law practice, the fundamental and substantial distinctions upon which the old common-law forms of actions were based, remain. Rights and causes of action remain the same; only technicalities of the pleadings and names and form of proceedings are changed."

It has been held in most of the states which have adopted the code system that a complaint or petition substantially the same in its form and its allegations as the old common counts in assumpsit is in accordance with fundamental principles of the code procedure and

is a good pleading. 4 Am Jur 522, Assumpsit § 34; 58 CJS 937, Money Received § 30.

We note that the Company did not move in the trial court to make the complaint more definite and certain. It was there that the objections it now makes to the complaint might have been satisfied if there found meritorious.

It has been many times said that an action for money had and received, although an action at law, is governed by equitable principles. *Smith v. Rubel,* 140 Or 422, 427, 13 P2d 1078, 87 ALR 644, and cases there cited. As said by Mr. Justice ROSSMAN in that case: "The action [money had and received] is liberal in form and greatly favored by the courts." (140 Or 426) *Snow v. Tompkins,* supra, at p 67; 4 Am Jur, supra, 509 § 20. Because of its equitable aspects and its appeal to good conscience, technical objections to pleadings are not favored in this type of action. *Snow v. Tompkins,* supra, at p 63.

So far as appellant's demurrer is concerned, the complaint does allege that the Company became indebted to plaintiffs for money had and received by it for the use and benefit of the plaintiffs in the sum of $3,000. This is a sufficient pleading under the old form known as "common counts." 58 CJS, supra, § 30. The law implies the requisite promise on the part of the defendant to render him liable to a money judgment. *Waite v. Willis,* 42 Or, supra, at p 289.

We hold that the Company's demurrer was properly overruled.

The second assignment alleges error because of the court's denial of the Company's motion for an involuntary nonsuit and by its third assignment because the court declined to direct a verdict in its behalf. We will consider the two together.

The Company specifies eight reasons in support of its claim of insufficiency of evidence to support a verdict. Seven of them are predicated upon the assumption that the Company, as the offeree, accepted the order of June 16, 1954, as made by the Hogans, as offerors, prior to the time that the Company received notice of the withdrawal or cancellation of their offer. Because of the view we take with reference to the validity of the Company's motion, it will not be necessary to give notice to the last seven reasons referred to above.

The Company correctly states the theory of plaintiffs' case when it says the case was tried on the theory that the Hogans' offer, accompanied by the Hogans' check for $3,000, was withdrawn prior to acceptance by the Company, thereby entitling the Hogans to a return of the $3,000.

The theory of the defense is that the Company had accepted the Hogans' offer before knowledge that it had been withdrawn. The Company makes no claim that its acceptance was in writing. It relies upon performance, evidenced, as it claims, by retention and deposit of the Hogan check and by sending two of its employees to Missouri to instruct the Hogans in methods of selling and applying its products.

Under the issues presented, the first and all-important, if not the only question for the jury's determination was whether the Hogans' offer was withdrawn before the Company accepted it. If the jury's conclusion on this was favorable to plaintiffs, it mattered not how and when thereafter the Company made its alleged gestures of acceptance. It is hornbook law that the existence of a contract is grounded on offer and acceptance and there is no agreement until the offer has been accepted in accordance with its very terms. As a

corollary, it is equally as firmly established that an offer may be withdrawn by the offeror before accepted by the offeree.

The first reason assigned by the Company in support of alleged errors two and three, and the only reason that we need to consider here is: that "The uncontradicted evidence establishes that the order was accepted and ripened into an executory contract."

The record discloses: That on June 16, 1954, the Company's agent Devon, then in St. Louis, came to the Hogans' home in Jefferson City, on the evening of that day, to discuss a further deal with the Company, that is, a possible second offer in addition to the one negotiated between the same parties on June eleventh. After the evening meal in Hogans' home, the meeting resulted in Hogan's signature to the offer of June sixteenth, now at bar. This was then delivered to the Company's agent Devon, together with the $3,000 check. The next day, Mr. Hogan telephoned Devon in St. Louis from Jefferson City and "told him to hold up the check and hold up the order." He was then told by Devon that the check had already gone to the Company's home office in Portland. Devon's testimony about this is substantially the same as Hogan's. Devon, however, fixes the telephone call as "the next morning" following the evening of June sixteenth.

Acting on this information from Devon, Hogan that day addressed a letter to L. J. Korter, the president of the Company (the letter is dated June 17), where he said, referring to the order of the day before: "I want you to hold up [the order] until I call, write or wire you." This letter carried special delivery and airmail postage.

On the same day he mailed the letter, Hogan also made a long-distance telephone call and talked with the

president of the Company, wherein he again indicated his withdrawal of the order. Mr. Korter, the Company's president, confirms receiving such a call from Hogan "one morning." Mr. Korter further testified that he believed "it was the next day [after receiving the order from Devon] that Mr. Hogan called me about this order." Korter was given an opportunity during the noon recess following to support his "belief" by checking the Company's records for more exact information with reference to when the Hogan check was first received and deposited, but upon his return to the stand he was unable to supply such data.

Summarizing the plaintiff Hogan's testimony, he proceeded with promptitude to withdraw plaintiffs' offer within the next eighteen hours after signing it: first, by calling Devon, the agent to whom he delivered it; secondly, by telephoning the president of the Company, and, lastly, on the same day, June 17, by sending a letter of withdrawal by airmail special delivery.

Of these several approaches made by the Hogans to notify the Company of the withdrawal of the offer, the jury might well have considered the first in point of time the most important in terms of effectiveness, especially if they took notice of the two hours in the time differential between St. Louis, Missouri, and Portland, Oregon. The jury was entitled to conclude therefrom that if the order had been mailed to Portland late the night before, as defendant's witness Devon testified, and Hogan notified him of cancellation the next morning, as Devon also testified, the Company's earliest receipt of the withdrawal was through Devon.

It is well established that knowledge of an agent is binding upon his principal if it concerns the business conducted through the agent, although the agent does not, in fact, inform his principal thereof.

3 CJS 194, Agency § 262; *Pennoyer v. Willis,* 26 Or 1, 8, 36 P 568; *Saratoga Inv. Co. v. Kern,* 76 Or 243, 253, 148 P 1125; *Stoddard Lbr. Co. v. Oregon-Washington R. & N. Co.,* 84 Or 399, 413, 165 P 363, 4 ALR 1275. Where an offer has not been accepted by the principal, a communication of revocation to the agent is communication to the principal. 3 CJS 200, Agency § 265; Anno, 43 ALR 745, 749. Also see *Night Commander Lighting Co. v. Brown,* 213 Mich 214, 181 NW 979, 980, and *J. B. Colt Co. v. Elam,* 138 Va 124, 120 SE 857, 858, wherein the facts closely proximate those found in the instant matter.

▪ On this state of the record, we are of the opinion that the court was justified in overruling appellant's motions and submitting the matter to the jury for determination.

▪ By its fourth assignment the Company represents that the court erred in permitting the Hogans to file their reply the day before trial.

The court may in its discretion allow a reply to be made after the time limited by the procedural statutes. ORS 16.050. Under ORS 16.660, the court is admonished to disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.

The reply did not change the cause. At most, it merely enlarged plaintiffs' opportunity to introduce evidence on the subject. The evidence adduced at the trial clearly reveals that the reply alleged no matters concerning which the Company had not been fully apprised for a long time prior to the filing of the complaint. The appellant does not claim surprise nor point to any hardship as a result of the court's action in overruling its motion to strike the reply.

In *Pope v. MacDonald,* 98 Or 373, 193 P 831, we

approved the action of the trial court in permitting the filing of a reply after the jury had been drawn. In *Hopwood v. Hopwood,* 141 Or 135, 16 P2d 638, we confirmed the court's action in allowing the filing of plaintiff's reply after all the evidence had been submitted.

Although we do not condone untimely delays in the filing of pleadings, we do not think the court abused its discretion in this matter by suffering the late filing of which the appellant complains.

We find no merit in appellant's fifth and sixth assignments of error.

AFFIRMED.