Argued October 7, affirmed November 26, 1976

ADAMS, *Respondent,*

*v.*

CRATER WELL DRILLING, INC., *Appellant.*

(No. 75-495-L-1, SC 24326)

556 P2d 679

*Ervin B. Hogan,* Medford, argued the cause and filed a brief for appellant.

*Sidney E. Ainsworth* of Davis, Ainsworth & Pinnock, Ashland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and McAllister, O'Connell and Tongue, Justices.

O'CONNELL, J.

## O'CONNELL, J.

This is an action to recover an overcharge by the defendant for services rendered in drilling a water well. Defendant appeals from a jury verdict which awarded the plaintiff $1,748 compensatory damages and $4,500 punitive damages.

In October of 1973 the parties agreed that defendant would drill a well for plaintiff at a rate of $4.00 per foot for soft rock and $8.00 per foot for hard rock. The well was drilled to a total depth of 500 feet. Defendant's charge of $3,878 for this service was based upon its claim that 437 of the 500 feet drilled was hard rock. Plaintiff disagreed with this assertion and paid only $2,000, the amount which would be due for drilling 500 feet in soft materials at the contract rate of $4.00 per foot. Defendant continued to assert that the balance of $1,878 was due.

Plaintiff and Wayne Chitwood, an agent of the defendant, met in February of 1974 to discuss the dispute. Chitwood was adamant in demanding the balance of the amount billed and advised plaintiff that unless the amount was paid the matter would be given to defendant's attorneys for collection. Shortly afterwards, plaintiff paid defendant $1,878 under protest in order to avoid litigation. Plaintiff sought to introduce evidence that he made the payment because he feared that the stress of litigation would harm his wife, who at the time was critically ill. The evidence was excluded on defendant's objection.

In March of 1975 plaintiff commenced this action against defendant. The complaint set forth the terms of the agreement, the amount billed, and the payment. Plaintiff further alleged that defendant falsely, knowingly and wilfully represented that drilling took place in hard rock. Plaintiff prayed for the recovery of the overcharge and also punitive damages in the amount of $25,000. The jury returned a verdict for plaintiff in

the amount of the overcharge[1] and also punitive damages in the amount of $4,500. Defendant appeals claiming that the complaint failed to state a cause of action, that no fraud was proven, and that the award of punitive damages was improper.

■ The complaint apparently was framed on the theory of an action for fraud. Assuming that the allegation of "payment" is sufficient to constitute an allegation of reliance, the complaint would withstand a demurrer.[2] However, the facts show that payment was not made in reliance upon defendant's misrepresentation but, according to plaintiff's own testimony, to avoid the trauma his wife would feel if an action were brought. Therefore, plaintiff cannot recover on the theory of fraud and deceit.

■■ The trial judge concluded that the complaint failed to state a cause of action for fraud, but expressed the view that a cause of action for money had and received was alleged. Defendant's counsel disagreed but made no motion to make the complaint more definite and certain. We may assume, then, that both plaintiff's and defendant's counsel proceeded with the presentation of the evidence upon the assumption that an action for money had and received was the theory of plaintiff's case. The trial judge purported to instruct the jury on that theory and invited defendant to suggest improvements on the judge's proposed instructions relating to the action for money had and received, but defendant declined the invitation, insisting that the complaint was not sufficient to allege such a cause of action.[3]

---

[1] Plaintiff amended his prayer to ask for $1,748, conceding that $130 of the amount initially disputed ($1,878) represented legitimate charges for grout and casing.

[2] *Cf., McGill v. Huling Buick Company,* 259 Or 413, 487 P2d 656 (1971).

[3] Some deficiencies existed in the complaint if construed as an action for money had and received. Such complaints usually allege in conclusionary terms a duty to pay the indebtedness by the defendant to the

Taking into account these procedural moves and rulings, we regard the case as presenting on appeal the sole issue of whether there was evidence to sustain an action for money had and received. There was sufficient evidence to establish that at the time defendant threatened to bring action against plaintiff, defendant, through its agent, knew that the amount claimed exceeded the amount plaintiff owed for the work done. The evidence clearly establishes that plaintiff paid the amount demanded. The only remaining question is whether plaintiff's payment was made under circumstances which would entitle him to restitution.

As a general rule money which is voluntarily paid with full knowledge of facts which would excuse payment cannot be recovered. Recovery of money paid is allowed, however, where payment is made as a result of fraud, mistake, duress or coercion.[4] The threat of a civil suit alone does not constitute duress or coercion sufficient to permit recovery of money paid to avoid the litigation.[5] However, if payment is made in response to a threat of civil proceedings and the threat is made "without probable cause and with no belief in

---

plaintiff, and recite the lack of right, title or interest of the defendant in the fund. *Hogan v. Alum. Lock Shingle Corp.,* 214 Or 218, 329 P2d 271 (1958). *See also, Clark v. U. S. Nat. Bank,* 11 Or App 437, 442, 503 P2d 502 (1972). The omission of these allegations in the present case is not fatal. Technical objections to actions in assumpsit are not favored. *Hogan v. Alum. Lock Shingle Corp., supra.* Because no motion or demurrer was filed by defendant and especially in light of the jury verdict, the complaint will be construed liberally. *McGill v. Huling Buick,* supra n. 2; *Western Feed Co. v. Heidloff,* 230 Or 324, 343, 370 P2d 612 (1962).

[4] *Scott v. Ford,* 45 Or 531, 78 P 742, 80 P 899, 68 LRA 469 (1904); *Thorsen v. Hooper,* 50 Or 497, 499-500, 93 P 361 (1908); *Southern Oregon Co. v. Gage,* 100 Or 424, 197 P 276 (1921); *Cram v. Powell,* 100 Or 708, 197 P 280 (1921); *First Nat'l. Bank v. Noble,* 179 Or 26, 168 P2d 354, 169 ALR 1426 (1946).

[5] This is so not because such threats are not in one sense coercive, but because the coercion is not sufficient to override the strong policy of permitting free recourse to the courts. See Dawson, *Duress Through Civil Litigation,* 45 Mich L Rev 571 (1947).

the existence of the cause of action," recovery in an action for money had and received is permitted.[6]

In the present case, the jury in assessing punitive damages must have found defendant's conduct to be in bad faith. We may assume, then, that this also establishes that the jury found the defendant's threat to bring suit was "without probable cause and with no belief in the existence of the cause of action."

■ Defendant finally contends that because punitive damages are not allowed in a contract action, they are improper in a money had and received action which arises out of a contractual transaction between the parties. However, this contention does not take account of the fact that defendant, in threatening to sue knowing that he had no rightful claim, is a wrongdoer in a tortious sense. That being the case, the same reasons for allowing punitive damages in actions brought to recover damages for tortious conduct should apply when the action is to recover payment made as a result of essentially tortious conduct. This is the view taken by the court in *Ward v. Taggart,* 51 Cal2d 736, 336 P2d 534 (1959). In that case the California Supreme Court held that although recovery in an action for money had and received is based upon the theory of an implied promise to return money wrongfully obtained, the recovery does not arise from

---

[6] Restatement, Restitution § 71, p. 290 (1937). In *Cram v. Powell,* 100 Or 708, 197 P 280 (1921) this court adopted the rule that, " 'It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist on *what he believes to be* his legal rights.' " (Emphasis added.) Similarly, in *First Nat. Bak. v. Multnomah Lbr. & Box Co.,* 125 Or 598, 622, 268 P 63 (1928), the threat to use legal process to seize a debtor's goods was held not to be legal duress "as long as the creditor acts strictly within his legal rights."

Additional authorities support the Restatement view. Professor Jaeger has written, "However, if the threat is made with the consciousness that there is no real right of action and the purpose is plainly coercive, a payment or contract induced thereby is voidable." Williston on Contracts § 1606, p.674 (3d ed Jaeger 1970). *See also, Leeper v. Beltrami,* 1 Cal Rptr 12, 347 P2d 12 (1959); *West Park Ave., Inc. v. Township of Ocean,* 48 NJ 122, 224 A2d 1 (1966), and *General Accident Fire & Life Assur. Corp. v. Berquist,* 15 Wis2d 166, 111 NW2d 900 (1961).

any agreement between the parties but arises from the wrongful conduct.[7] We agree with the reasoning employed in *Ward v. Taggart* and hold, therefore, that the court properly submitted the issue of punitive damages to the jury.

Judgment affirmed.

---

[7]The court observed that: "Courts award exemplary damages to discourage oppression, fraud, or malice by punishing the wrongdoer. See McCormick, Damages, § 79; Morris, Punitive Damages in Tort Cases, 44 Harv L Rev 1173, 1185-1188. Such damages are appropriate in cases like the present one, where restitution would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims beyond that of returning what they wrongfully obtained (citing cases)." 336 P2d at 538.