*[1139] LEE, J.
Plaintiff appeals from the circuit court’s order requiring it to forfeit a $23,226 bid bond to defendant.
Early in 1974, defendant sought bids for a project involving "stockpiling crushed mineral aggregates in [the] Melrose Area [Melrose Project].” Plaintiff, a corporation engaged in construction work, evinced interest in the Melrose Project. As the project required the use of rock, Robert Taggart, the president of plaintiff who together with his wife own all of plaintiffs stock, asked the Douglas County Engineer where such rock was located in Douglas County. The engineer recommended a local source of rock known as the Handy Bar. Taggart visited the Handy Bar on March 12,1974, and was told by one of the two owners of the Handy Bar that the rock was for sale but that the price of the rock could not be determined until the other owner had been consulted. Taggart drew up and signed an incomplete bid on the Melrose Project, and instructed his bookkeeper to obtain a price for the Handy Bar rock and to complete the bid accordingly. Taggart then left for a vacation.
On March 16, plaintiff’s bookkeeper was told by the owners of the Handy Bar that the price for the rock would be approximately $1.25 per cubic yard. The bookkeeper completed the bid using that price and submitted it. Accompanying the bid was a bid bond of $23,226 which provided:
"NOW, THEREFORE, if the [Defendant] shall accept the bid of the [Plaintiff] and the [Plaintiff] shall enter into a Contract with the [Defendant] in accordance with the terms of such bid, and give such bond or bonds as may be specified in the bidding or Contract Documents with good and sufficient surety for the faithful performance of such Contract and for the prompt payment of labor and material furnished in the prosecution thereof, or in the event of the failure of the [Plaintiff] to enter such Contract and give such bond or bonds, if the [Plaintiff] shall pay to the [Defendant] the difference not to exceed the penalty hereof between the amount *[1140] specified in said bid and such larger amount for which the [Defendant] may in good faith contract with another party to perform the Work covered by said bid, then this obligation shall be null and void, otherwise to remain in full force and effect.”
On March 20, the bids on the Melrose Project were opened, with plaintiffs low bid of $232,260 being $116,540 lower than the next lowest bid. Later that day, Taggart’s father learned that the Handy Bar rock was no longer for sale, and on March 21, the bookkeeper delivered a written withdrawal of plaintiff’s bid to defendant. On April 3, defendant awarded the contract to plaintiff. Plaintiff sued to relieve itself of any obligation pursuant to its bid, and alleged in part that since it had withdrawn its bid, "there never existed an agreement between [plaintiff] and the County.” Defendant counter-claimed seeking forfeiture of the bid bond. The court denied plaintiff’s request for equitable relief and ordered forfeiture of the bid bond.
In order for a contract to exist, the parties thereto must manifest a mutual intent to be bound, usually demonstrated by an offer, or in this case a bid, and acceptance. Phillips v. Johnson, 266 Or 544, 555, 514 P2d 1337 (1973). The general rule is that an offeree’s power of acceptance may be terminated by revocation of the offer at any time prior to the acceptance of the offer. Hogan v. Alum. Lock Shingle Corp., 214 Or 218, 226, 329 P2d 271 (1958); Restatement of Contracts (Second) §41, §42. If an offeror undertakes to bind himself through the receipt of bargained for consideration to leave open an offer for a period of time, an option contract has been created and the offer is not revocable until the specified time passes. The common law rule has been statutorily modified in Oregon to eliminate the requirement of consideration for some such "firm offers” between merchants when the offer provides that it is irrevocable for a period of time, ORS 72.2050. It has been urged, see Keyes, Consideration Reconsidered — The Problem of the Withdrawn Bid, 10 *[1141] Stan L Rev 441 (1958), and held, if only by implication, that consideration is not necessary to make a bid on a public works contract irrevocable for a reasonable period of time. See, M. F Kemper Const. Co. v. City of L.A., 37 Cal 2d 696, 235 P2d 7 (1951); Boise Junior College District v. Mattefs Const. Co., 92 Ida 757, 450 P2d 604 (1969). However, unless the parties agree that a bid is to be irrevocable for a period of time, or unless a relevant statute or municipal ordinance or rule specifically so provides, the general rule is that bids are freely revocable prior to acceptance.[1] See McQuillin, Municipal Corporations §29.67 (1966).
Since defendant makes no contention that the form of plaintiffs withdrawal of its bid was not, in the abstract, an effective means of revocation, the question becomes whether plaintiff agreed to hold its bid open for acceptance until April 3, 1974. We find nothing either in the specifications for the bid, which were incorporated into plaintiff’s bid, or in any other portion of the bid, or in the bid bond itself which bound plaintiff not to withdraw its bid. The only provision in the bid which could possibly be interpreted as binding plaintiff not to withdraw its bid provides:
" Whenever in these specifications and contract, the following terms are used, they shall be understood to have the meanings given herein.'
* * * *
" 'Standard Specifications’ — The standard specifications which are applicable to these general provisions and the special and technical provisions herein contained and the performance thereof and the contract to *[1142] be awarded are those titled Oregon State Highway Department Standard Specifications for Highway Construction (issue of 1970) hereinafter called the standard specifications except as the same may be modified, supplemented or superseded by the general, special and technical provisions herein contained. The contractor shall be bound to Douglas County by applicable provisions of the above specifications as he would be if each mention of State Highway Commission, Engineer therein were to read County, County Board of Commissioners or County Engineer, respectively.” (Emphasis added.)
Sections 102.13[2] and 103.02[3] of the Oregon State Highway Department Standard Specifications appear to require that bids may not be withdrawn in the 30 days after all bids have been opened. However, reading the bid as a whole, it is clear that it was not intended that sections 102.13 and 103.02 apply to plaintiffs bid. First, the whole of the State Highway Department Standard Specifications is not made applicable to the bid; rather the bid calls for the state standards to be applied only when the phrase "standard specifications” is used. "Standard Specifications” is not used in the portion of the bid describing the bidding procedure and bid bond requirements.[4] Second, the portion of the bid set forth above is definitional rather than operational in effect, and in itself imposes no obligations.
*[1143] The only state statute which could conceivably have applicability here is ORS 279.031, which governs the bidding procedures for contracts with public bodies:
"Upon the execution of the contract and bond by the successful bidder, his bid security shall be returned to him. The bidder who has a contract awarded to him and who fails promptly and properly to execute the contract or bond shall forfeit the bid security that accompanied his bid. The bid security shall be taken and considered as liquidated damages and not as a penalty for failure of the bidder to execute the contract and bond. The bid security of unsuccessful bidders may be returned to them when the bids have been opened and the contract has been awarded, and shall not be retained by the public body after the contract has been duly signed.”
We find nothing in the language of ORS 279.031 which requires that bids not be withdrawn after they have been opened but prior to the time they are accepted. Rather, ORS 279.031 applies only to the situation where a proper contract has been formed by the acceptance of an extant bid and where the successful bidder refuses to execute that contract. ORS 279.031 thus parallels the language in the bid bond set forth above. Our holding here is that by virtue of the effective withdrawal of the bid, no contract was ever formed. Further, the last sentence of ORS 279.031 only allows the return of the bid bonds of the unsuccessful bidders after the contract has been awarded. If ORS 279.031 was indeed designed to make bids irrevocable until they had been accepted, the protective aspects of the last sentence of ORS 279.031 would be unnecessary and it would be more likely that the statute would allow the return of the unsuccessful bidders’ bonds after the opening of the bids.
We recognize that public bodies such as Douglas County may often have a strong interest in insuring that a low bidder not withdraw his bid between the time the bid is opened and the time it is accepted. Depending upon the nature of the bid, the public body may spend considerable amounts of money investigating the technical aspects of the bid and the bidder’s *[1144] qualifications to perform the job — money that possibly could not be recouped if the bid were withdrawn. However, this public policy concern does not require a blanket rule that all bids on public contracts are irrevocable prior to acceptance for a less sweeping alternative is available. If the public body so chose, it could simply specify, either through regulation, ordinance, or in the actual bid specifications, that it would only consider bids which contain a provision that they be irrevocable for a period of time. The reliance by the public body on the bid would constitute whatever consideration is necessary for such a "firm offer” provision, see Restatement 2d, Contracts, § 90, and the required bid bond could specifically state that it would be forfeited if the bid was withdrawn.[5]
Accordingly, under the circumstances of this case, where defendant apparently did not detrimentally rely on plaintiffs bid before the bid was withdrawn, we conclude that plaintiffs withdrawal of its bid was effective, and that the Board of Commissioner’s actions on April 3 did not bind plaintiff to either perform the work specified in the bid or forfeit its bid bond.
Reversed and remanded with instructions to enter an order consistent with this opinion.

In Rushlight Co. v. City of Portland, 189 Or 194, 219 P2d 732 (1950), the Supreme Court discussed but did not decide whether bids could be withdrawn when no "firm offer” provision was made in the bid. The dissent suggests that since the Court in Rushlight decided the case on rescission-mistake analysis, it impliedly held that bids could not be withdrawn until they were accepted. The choice of one resolution on a particular issue which renders unnecessary resolution of any other issues in a case should not properly be read as impliedly resolving other issues.
The dissent also suggests that the common law rule is that bids may not be withdrawn prior to acceptance. We find no cases which support such a blanket proposition.

Section 102.13 provides:
"Permission will not be given to modify or explain any proposal after it has been deposited with the State Highway Commission.
"A bidder may withdraw a proposal after it has been deposited with the [State] Highway Commission, provided the request for such withdrawal is received by the Commission before the time set for opening proposals.”

 Section 103.02 provides:
"All proposals shall be submitted subject to acceptance and award of the contract within 30 days from the date of the opening of the proposals, and the bidder will not be bound for a longer period except by special agreement or except as otherwise provided in the special provisions. * * *”

The phrase "standard specifications” is used only in the more technical aspects of the bid relating to the methods used to crush the rock.

 Contrary to the suggestion of the dissent, we do not hold that the bond submitted by Taggart is a performance bond. Rather, the bond is, by its terms and in operation and effect, a bid bond.