Argued and submitted March 28, affirmed in part;
reversed and remanded in part May 27, 1980

GERGEN, et ux,
*Respondents - Cross-appellants,*
*v.*
BARTZAT, et al,
*Appellant.*

(No. 78-1048, CA 15331)

611 P2d 352

Steve P. Chez, Eugene, argued the cause and filed the briefs for appellant.

E. Scott Lawlor, Eugene, argued the cause for respondents - cross-appellants. With him on the briefs was McCoy and Lawlor, Eugene.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges, and Howell, Judge Pro Tempore.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals from a judgment in favor of plaintiffs in an action for money had and received after plaintiffs' demurrer to defendant's affirmative defense and counterclaim was sustained by the trial court. Plaintiffs cross-appeal, contending that the striking of their claim for punitive damages was error.

Because the only issue raised by defendant's appeal arises on demurrer, we only know what is set forth in the pleadings, which are not very informative. The parties agree, however, that the issue is whether, on its face, the contract, entered into in 1971, relied upon by defendant in his affirmative defense and counterclaim is a brokerage contract.[1] By virtue of that contract, defendant alleged he did not owe plaintiffs any

---

[1] The agreement provides:

"THIS AGREEMENT made between Ferris Gergen and Patricia Gergen, husband and wife, hereinafter designated as Seller, and A. M. Bartzat hereinafter designated as Purchaser, WITNESSETH:

"1. The Seller agrees to sell a three bedroom house located at 763 Armstrong Lane - Eugene, Oregon, in its present condition, to Purchaser for assuming the existing loan at the U. S. National Bank River Road Branch - Eugene, Oregon.

"2. The Purchaser agrees to assume the loan in the amount of $13,144.06 (Thirteen Thousand one hundred forty-four dollars and six cents.) All prepaid taxes and insurance payments are to be prorated, based on the $31.90 (Thirty-one dollars and ninety cents) prepaid insurance and the $85.98 (Eighty-five dollars and ninety-eight cents) prepaid tax reserve only. This will be refunded to the Seller in cash at the time of the transaction. Purchaser agrees to assume the loan transfer costs not to exceed $50.00 (Fifty dollars.)

"3. Purchaser agrees to buy the refrigerator and range for $45.00 (Forty-five dollars) each, or a total of $90.00 (Ninety dollars).

"4. Purchaser agrees to put this house on the market at the end of 180 days from February 2, 1971 to sell at a reasonable market price. Any profits obtained from the sale above existing loan as of February 2, 1971, and all other expenses will be equally divided between Purchaser and Seller.

"This division of profits is to be made only after all commissions, interest, prorated taxes, insurance, maintenance, etc. have been paid and deducted.

money and that they owed him money. The trial court concluded that it was a brokerage contract and, because defendant had not alleged that he was a licensed real estate broker, the contract was void. Accordingly, plaintiff's demurrer was sustained.

The relevant statutes in effect at the time of the transaction[2] prohibited any person from engaging in the business of a real estate broker unless licensed to do so. Former ORS 696.020. That term was defined in former ORS 696.010:

"* * * * *

"(8) 'Real estate broker' means any person who, for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation:

"(a) Sells, exchanges, purchases, rents or leases real estate.

"* * * * *

"(9) 'Real estate broker' also means any person employed by or on behalf of the owner of real estate at a stated salary or upon a commission or upon a salary and commission basis or other compensation to sell, exchange or offer for sale such real estate, or any

---

"5. Seller agrees to vacate this house at 763 Armstrong Lane Eugene, Oregon within seven days after delivery of a new three-bedroom mobile home is made by the Purchaser.

"6. Seller agrees to sign loan transfers, deeds and all papers necessary to complete this transaction.

"IN WITNESS WHEREOF the parties have caused this agreement to be signed this 15th day of January, 1971.

"* * * * *

"AMENDMENT TO THIS CONTRACT:

"PURCHASER AGREES TO HOLD SELLER HARMLESS IN REGARDS TO ANY LOAN CHARGES RECOURSE OR ANY TAXES OR LIENS OF ANY KIND WHATSOEVER."

[2] It is not clear when the property was sold. The complaint alleges that defendant became indebted to plaintiffs in December, 1976, but the contract provided that the property would be offered for sale "at the end of 180 days from February 2, 1971." It may be that later versions of the relevant statutes would be applicable, but we do not perceive that it would make any difference in the result here.

part thereof, and who shall sell or exchange, or offer
or attempt or agree to negotiate the sale or exchange
of any lot or parcel of real estate.

Contracts for compensation made in contravention
of the laws governing real estate brokers are void.
*Hunter v. Cunning,* 176 Or 250, 154 P2d 562, 157 P2d
510 (1944); *Jolma v. Steinbock,* 40 Or App 657, 596 P2d
980, *rev den* 287 Or 409 (1979). Therefore, if the
contract at issue is a brokerage contract it is void
because defendant was not licensed as a broker or
salesman.

Defendant argues that he had an interest in the
property and, therefore, he was not acting "for
another" in handling the property. *Devereaux v. Cock-
erline,* 179 Or 229, 170 P2d 727 (1946), distinguished
between a brokerage contract and a partnership agree-
ment in which the acting party has an interest in the
property. The court there, relying on *Flower v. Bar-
nekoff,* 20 ·Or 132, 25 P 370, 11 LRA 149 (1890),
determined that an agreement to share losses as well
as profits was essential to create a partnership. The
court also pointed out that if the only consideration for
the agreement was the rendition of services, the
arrangement is not a partnership.

The contract here provides that plaintiffs agree to
sell their house to defendant and that defendant, in
turn, agreed to assume the mortgage on the house, and
to be liable for any taxes or liens on the property.
Defendant further agreed to put the house on the
market 180 days from the date of the agreement to sell
at "a reasonable market price," and to divide equally
with plaintiff any profits over and above the mortgage
as of the date of the agreement. Expenses were to be
shared equally by the parties; the division of profits
was to be made only "after all commissions, interest,
pro-rated taxes, insurance, maintenance, etc., have
been paid and deducted." It is apparent that the ex-
penses could have exceeded the "profit" made on the
sale of the house, in which case defendant would share
in the losses of the venture.

[351]

Not only is the foregoing true, but the agreement does not provide that defendant will sell the house, but only that he would put it on the market; any commission paid was to be deducted before the profit was determined. It appears that the agreement contemplated that someone other than defendant would perform the services of a broker in connection with the sale. Therefore, from the face of the agreement we cannot say that it was a brokerage agreement in violation of ORS 696.020.[3] Plaintiffs' demurrer to defendant's counterclaim should have been overruled.

On cross-appeal plaintiffs contend that their claim for punitive damages should not have been stricken by the trial court. We find no error. Although the Supreme Court has held that punitive damages may be recovered in an action for money had and received, *Adams v. Crater Well Drilling, Inc.,* 276 Or 789, 556 P2d 679 (1976), here there is not a sufficient allegation to warrant recovery of punitive damages. There is no allegation of malice or fraud on the part of defendant. The fact that the contract was alleged to be illegal does not in itself constitute an allegation of malice, and we have concluded that the contract is not illegal, at least on its face. The claim was properly stricken.

Affirmed in part, reversed in part and remanded.

---

[3] If the case is tried on the merits, it may be that the evidence will prove otherwise. We are dealing only with the contract on its face, and while it appears that the contract was part of a larger transaction, we cannot make that determination, or its effect, if any, from the pleadings.