Argued and submitted February 5, affirmed July 21,
reconsideration denied September 2,
petition for review allowed October 5, 1982 (293 Or 634)

**DAVIS,**
*Respondent,*

*v.*

**TYEE INDUSTRIES, INC. et al,**
*Appellants.*

(No. A 7904-01927, CA A20704)

648 P2d 388

Katherine H. O'Neil and Donald Joe Willis, Portland, argued the cause for appellants. With them on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Mark McCulloch, Portland, argued the cause for respondent. With him on the brief was Powers & McCulloch, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

This is an action for money had and received by which plaintiff seeks to recover sales commissions allegedly owed to him. Defendants appeal the judgment after a jury verdict which awarded plaintiff $6,195.81 compensatory damages and $90,000 punitive damages.

Plaintiff is a salesperson employed by Brodie-Dohrmann, Inc. (Brodie), a wholly owned subsidiary of a Washington-based corporation, Tyee Industries (Tyee). In July, 1976, plaintiff, who had been a salaried employe, began working for Brodie on a commission basis. Although he had no written contract with Brodie, it was understood that he would receive commissions on sales made to customers in his assigned territory, if the customer was not assigned to another salesperson.[1] Early in 1978, plaintiff became suspicious that customer numbers were being changed on his invoices. He had noticed that his customer numbers had been lined out and changed to the house cash sales number or to a number representing a salesperson other than himself on some invoices. As a result, his commissions were less than he had anticipated. He made several attempts to get the invoices corrected without success. In the latter part of 1978, a file clerk discovered that customer numbers had been changed on invoices of several other Brodie sales employes.

On December 7, 1978, Mr. Thorenson, president of Tyee, and Mr. Maza, a liason officer employed by Brodie, met with plaintiff and other salespersons to discuss a letter drafted by Brodie employes concerning relations between management and employes. One item on the agenda was the problem of changed customer numbers. At the meeting, employes were invited to contact Mr. Maza, who stated he would make adjustments to an employe's commission if errors were in fact discovered. Several employes asked for and received adjustments. Plaintiff received $72 for invoice errors.[2]

---

[1] The actual commission agreement gave plaintiff a certain percentage of Brodie's profit on each sale. Plaintiff was to receive credit for sales made by salaried employes in Brodie's Portland store to plaintiff's customers, as well as for sales made by plaintiff to customers in his territory.

[2] An additional check drawn on the Tyee account in the amount of $184.42 was sent to plaintiff on December 11, 1979, after the suit had been filed.

On April 23, 1979, plaintiff filed an action against defendants for fraud and for money had and recieved. The fraud count listed ten specifications of fraudulent conduct allegedly committed by defendants, including the changing of customer numbers on invoices. On motion by defendants, plaintiff, on November 13, 1980, was ordered by the court to

> "provide defendants by December 10, 1980, with a list of the sales orders upon which plaintiff claims he was defrauded by defendants and the specifics of each sales order which plaintiff will contend at trial constitutes fraud."

Plaintiff identified approximately 400 sales orders upon which he intended to rely at trial. On December 26, 1980, the court again ordered plaintiff to identify the specifics of fraud for each sales order so identified. Instead of complying with the December 26 order, plaintiff moved to amend his complaint to eliminate the cause of action for fraud. The court granted the motion, but ordered that

> "plaintiff's evidence at trial shall be limited to the matters (a)-(c) contained in [plaintiff's counsel's] January 8, 1981 letter to defendants, and that plaintiff may not introduce any evidence which would have been admissible to prove the matters mentioned in subparagraphs A through J [of the fraud count] on pages 2 and 3 of plaintiff's original complaint."

Plaintiff proceeded to trial on the money had and received cause of action, and the jury returned the verdict in his favor.

Defendants assign eight errors and make several arguments under two of the assignments. We need concern ourselves only with some of the arguments.

At the outset, it must be determined whether the facts of this case constitute a cause of action for money had and received. Defendants raise the issue in their second assignment, contending that the trial court erred in failing to direct a verdict for defendants on the issue of general damages.

The action for money had and received is "liberal in form and greatly favored by the courts." *Albino v.*

*Albino,* 279 Or 537, 553, 568 P2d 1344 (1977). The test is whether a defendant, in equity and good conscience, is entitled to keep money to which a plaintiff makes a claim. *Rosenblum v. First State Bank of Elgin,* 283 Or 123, 127, 581 P2d 515 (1978); *Smith v. Rubel,* 140 Or 422, 426, 13 P2d 1078 (1932). It is not necessary that the defendant have received money from the plaintiff to enable the action to be maintained. *Pankey v. Oregon Etc.,* 122 Or 346, 351, 255 P 470 (1927); *Shell Co. of California v. O'Reilly,* 121 Or 215, 220, 253 P 1046 (1927). Here, plaintiff makes a claim to money held by defendants that should have been paid to him as sales commissions. The cause of action for money had and received is appropriate.

■ Defendants next contend that even if plaintiff is entitled to bring an action for money had and received, the evidence does not support a verdict for general damages. During trial, extensive evidence was presented by both sides concerning sales commissions allegedly owed to plaintiff. Each party had an "expert" explain the reams of computer printouts and dozens of invoices admitted in evidence. Examination of the evidence convinces us that a jury could have found plaintiff was entitled to commissions in the amount awarded. The denial of defendants' motion for a directed verdict was proper.

■ Defendants' first assignment of error raises the major issue in this case: whether plaintiff may recover punitive damages on a cause of action for money had and received. They assign error to the failure to grant their motion for a directed verdict on the issue of punitive damages. They also assign as error the sufficiency of the pleading. Plaintiff's amended complaint alleges in part that

"Defendants' conduct in failing to pay plaintiff the sum of $6,195.81 or any part of it has been willful, wanton, malicious, and in disregard of societal interests and the rights of the plaintiff. For this conduct defendants should be assessed punitive damages in the sum of $100,000.00."

An allegation of willful, wanton and malicious conduct is sufficient to support a claim for punitive damages. *See Gergen v. Bartzat,* 46 Or App 347, 352, 611 P2d 352 (1980).

■ Defendants contend that this case should be decided under Washington law, which does not allow

punitive damages in an action for money had and received. Defendants did not raise this argument at the trial court level, nor do they cite any authority in their briefs in support of the contention that Washington law should apply. Matters not presented to the trial court will not be considered on appeal, absent special circumstances. *Travelers Indemn. v. American Ins.,* 278 Or 193, 199, 563 P2d 684 (1977).

Defendants next contend that, although the action is one at law, it is governed by equitable principles, and punitive damages are not recoverable in equity. *Albino v. Albino, supra,* 279 Or at 554. However, the Supreme Court has held that when the action for money had and received is brought to recover money obtained by a defendant through tortious conduct, punitive damages will be allowed. *Adams v. Crater Well Drilling, Inc.,* 276 Or 789, 556 P2d 679 (1976). In *Adams,* the defendant intentionally overcharged the plaintiff for drilling a well on the plaintiff's property. When the plaintiff refused to pay the overcharge, the defendant threatened to sue the plaintiff, and the plaintiff paid the defendant. The plaintiff brought an action alleging fraud, but the trial court, finding no reliance on the plaintiff's part, instead awarded the plaintiff compensatory and punitive damages on the theory of money had and received. In upholding the award of punitive damages, the Supreme Court stated:

> "Defendant finally contends that because punitive damages are not allowed in a contract action, they are improper in a money had and received action which arises out of a contractual transaction between the parties. However, this contention does not take account of the fact that defendant, in threatening to sue knowing that he had no rightful claim, is a wrongdoer in a tortious sense. That being the case, the same reasons for allowing punitive damages in actions should apply when the action is to recover payment made as a result of essentially tortious conduct." 276 Or at 794.

In *Adams,* the defendant had coerced the plaintiff into making a payment of money to which the defendant knew he was not entitled. There, the defendant had received money from the plaintiff by the tortious conduct of coercion. In the present case, the jury, in awarding punitive damages, must have found defendants' conduct in

withholding sales commissions from plaintiff to be in bad faith, that is, that defendants intentionally withheld plaintiff's commissions knowing that they had no right to retain the money. This amounts to the tortious conduct of conversion and, under the holding of *Adams,* plaintiff is entitled to punitive damages. Defendants argue that the present case is distinguished from *Adams* in that *Adams* was an action for fraud which failed, and, to prevent unjust enrichment, the court fashioned a cause of action for money had and received. Here, plaintiff has pled an action for money had and received, requesting punitive damages, alleging intentional and malicious conduct on the part of defendants. Defendants had clear notice of plaintiff's theory of the case from the outset. The record shows that defendant presented the jury with a vigorous defense against the imposition of punitive damages. That the present case was not based on fraud is irrelevant.

Defendants also contend that recovering a payment *made* is not the same as recovering a payment *withheld.* We see no reason to treat the cases differently. As the court stated in *Adams,* "the recovery does not arise from any agreement between the parties, but arises from the *wrongful conduct.*" (Emphasis added.) 276 Or 794-795. Intentionally withholding money in bad faith is just as wrongful as intentionally taking money rightfully belonging to another. We therefore hold that, under the facts of this case, plaintiff is entitled to punitive damages on his cause of action for money had and received. The trial court did not err in denying defendants' motion for a directed verdict on the issue of punitive damages.

Defendants finally argue that the evidence does not support an award of punitive damages. Although defendants tried to explain the changes in invoice numbers as mistakes and clerical errors, there was sufficient evidence to allow the jury to find that the invoices were tampered with with the intent to deprive plaintiff of rightfully earned commissions. The award of punitive damages was supported by the evidence.

■ Defendants' third assignment is that the court erred in denying a motion for mistrial made on the ground that plaintiff violated a pre-trial discovery sanction.

Defendants contend that the court's order of January 16, 1981, forbade plaintiff from introducing any evidence of fraud, including invoices on which customer numbers had been changed. We do not read that order so narrowly. Its purpose was to make certain that defendants were not prejudiced by plaintiff's failure to provide discovery. In fact, plaintiff did provide defendants with a list of the sales orders upon which plaintiff was intending to rely at trial. The January 16 order specified that plaintiff was to limit his evidence to three categories: a) cash sales made by plaintiff or to one of his accounts for which he did not receive credit; b) non-cash sales made by plaintiff for which he did not receive credit; and c) non-cash sales to one of plaintiff's accounts for which he did not receive credit. The invoices with changed customer numbers constitute evidence that falls in one or another of the above categories. Absent a showing by defendants that they were unfairly prejudiced by the introduction of the evidence, we cannot say that the trial court abused its discretion in denying the motion for mistrial. *Kashmir v. Patterson,* 43 Or App 45, 50, 602 P2d 294 (1979), *aff'd* 289 Or 589, 616 P2d 468 (1980).

■     Defendant's fourth assignment is that the trial court erred in refusing to grant defendants' motions for mistrial based on the admission of irrelevant and prejudicial evidence concerning third-party experiences. Plaintiff, over defendants' objection, was allowed to introduce testimony of three Brodie employes who had experienced similar problems with improper crediting of sales commissions. This evidence bears on the issue whether defendants acted in bad faith toward plaintiff as one of their employes and is, therefore, relevant to a claim for punitive damages. *Vandermeer v. Pacific N. W. Develop.,* 274 Or 221, 231, 545 P2d 868 (1976); *Joachim v. Crater Lake Lodge,* 48 Or App 379, 389, 617 P2d 632, *rev den* 290 Or 211 (1980). All three witnesses had customer numbers changed on their invoices during the same time period in which plaintiff had numbers changed on his invoices. Plaintiff's employment relationship with defendants was the same as that of the three witnesses. The evidence is sufficiently probative of the mental attitude of defendants toward their employes to bring its admissiblity within the permissible discretion of the trial judge.

Defendants' fifth assignment concerns the violation of a statute on evidence. Defendants, however, have failed to set out the statute in their brief, and, insofar as the statute cited is an incorrect reference, we. have no way of knowing upon which statute defendants rely. Rules of Appellate Procedure 7.24 requires that statutes be set out verbatim with proper citation. We, therefore, will not consider that assignment.

Defendants' sixth assignment is that the trial court erred in refusing to enter a verdict for Tyee because it is not a proper party defendant. Brodie is a wholly-owned subsidiary of Tyee. Commission checks sent to plaintiff were drawn on Tyee's bank account, not Brodie's. Tyee is a proper party defendant.

As for defendants' final two assignments, that the trial court erred in refusing to grant a mistrial on the ground of improper rebuttal argument and that the court erred in its selection of jury instructions, we find that the court did not abuse its discretion in either regard.[3]

Affirmed.

---

[3] We note with disproval defendants' failure to set out verbatim the jury instructions complained of in assignment of error number eight. Assignments of error that the court can consider only by searching the record will not be considered. ORAP 7.19.