ROSENBLUM et al, *Respondents,*
*v.*
FIRST STATE BANK OF ELGIN, *Appellant.*
(TC L-24003, SC 25611)
581 P2d 515

Carl G. Helm, of Helm, Petersen & Mukatis, La Grande, argued the cause and filed the brief for appellant.

R. T. Gooding, of Gooding & Susak, La Grande, argued the cause and filed the brief for respondents.

PER CURIAM.

**PER CURIAM.**

This is an action for money had and received. Plaintiffs are the owners of an airplane rented under contract to the United States Forest Service. Defendant bank had an assignment of the rental payments under the contract to secure its loan to a previous owner of the plane. The subject of this action is a mistaken payment of $10,190 made under that contract to the bank on behalf of the previous owner who, at that time, had no further right to rental payments under the contract.

The case was tried to the court, sitting without a jury. The court found that defendant was not entitled to retain the payment. Defendant appeals.

■ The questions raised by defendant's assignments of errors are mostly questions of fact. As to those questions, and because this is an action at law, we need only ascertain whether there is evidence to support the court's judgment. We have reviewed the record and have found ample supporting evidence. We also agree with the decision of the trial court on the remaining questions of law raised by defendant's assignments of error, as set forth in its opinion, which was as follows:

"MEMORANDUM OPINION

"* * * On May 3, 1974, La Grande Air Service, Inc. (hereafter referred to as 'Air Service') entered into a contract (number 004329S) with the United States Government, Department of Agriculture, Forest Service, (hereafter referred to as 'United States') which required that firm to furnish to the government one fully operational Beechcraft 99 airplane or equal.

"Air Service was to be compensated at the rate of $600.00 for each day the airplane was mandatorily available to United States and an additional $200.00 per hour that the airplane was used. Air Service was a corporation conducting a business concerned with aircraft, with its principal place of business at the La Grande Municipal airport in Union County, Oregon. Defendant Wayne L. Mitchell was the principal executive officer of Air Service.

"Air Service purchased a 1969 Beechcraft airplane, N991GP (hereafter referred to as 'airplane'). It subsequently negotiated a loan from First State Bank of Elgin in the amount of $275,000.00, and these funds were dispersed on August 28, 1974. The funds borrowed by Air Service from First State Bank of Elgin were used to purchase the 1969 Beechcraft airplane, N991GP. As security for the loan, Air Service gave the bank a lien on the airplane and assigned the proceeds from the contract with United States.

"By the terms of the assignment of the proceeds from Contract No. 004329S, Air Service agreed to notify United States of the assignment and to direct that all payments under the contract be sent to the bank until the bank notified United States otherwise. This notice was given by Air Service to United States. The assignment noted Air Service's indebtedness to the bank and the contract entered into by Air Service with United States. Also, the assignment provided that the bank was to notify United States to discontinue payments at the time the indebtedness was fully paid and at that time the assignment would be null and void.

"In September 1975, Air Service sold the airplane to Aerofin, Inc. On November 19, 1975, there was mailed to the bank a draft in the amount of $196,686.58 from Aerofin, Inc., as a full payoff of the bank's loan on the airplane. On November 24, 1975, the bank executed a release of its lien and security agreement on the airplane. Mr. Glenn W. Kirkeby, who was then executive vice-president and who is now president of the bank, handled this transaction on behalf of the First State Bank of Elgin.

"On December 15, 1975, plaintiffs purchased the airplane from Aerofin, Inc. Plaintiffs assigned the proceeds they understood they were to receive from United States for rental of the airplane to Crocker National Bank, and these payments were to be applied on plaintiffs' indebtedness incurred in connection with their purchase of the airplane. No notice was given United States, however, of the sale of the airplane by Air Service or its eventual purchase by plaintiffs.

"During March and April 1976, and while the airplane was owned by plaintiffs, the airplane was used by

United States pursuant to Contract No. 004329S and the funds from the work and service were accumulating. On April 8, 1976, and April 15, 1976, plaintiff Murray R. Rosenblum talked on the telephone with Mr. Glenn W. Kirkeby, and Mr. Rosenblum informed Mr. Kirkeby of plaintiffs' ownership of the airplane and the right to the funds earned from the use of that airplane. Mr. Kirkeby declined to recognize plaintiffs' interest in the airplane rental receipts, claiming that he still had a valid assignment from Air Service that entitled the bank to the proceeds. On April 19, 1976, United States executed its check payable to the order of First State Bank of Elgin, as assignee of Air Service on Contract No. 004329S, in the amount of $10,190.80. The bank negotiated this check and applied $7,338.27 on other obligations of Air Service to the bank and deposited the balance, $2,852.53, to the accounts of Air Service in the First State Bank of Elgin. Plaintiffs seek recovery of the $10,190.80 paid to the bank by United States.

"Plaintiffs bring this action for money had and received. The leading case in Oregon on this type of action is *Smith v. Rubel,* 140 Or 422 [13 P2d 1078] (1932). In this case, the Court notes the applicable law to be as follows:

" 'An action for money had and received, although an action at law, is governed by equitable principles. (Citations omitted.) The action is liberal in form and greatly favored by the courts. (Citations omitted.) The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. (Citations omitted.) As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund. (Citations omitted.) The right to the refund is based upon a promise to return which the law implies, irrespective of any actual promise, and even against the refusal of the wrongful party to make it. (Citations omitted.) The payer's failure to

exercise ordinary care to avoid mistakes will not defeat his right to recovery in the absence of a change of condition upon the part of the payee. It is sometimes said that neglect to bar recovery must consist of intentional failure to investigate. (Citations omitted.) An error of fact is established when it appears that some fact which the payer supposed existed really did not exist. (Citations omitted.)' 140 Or 426 and 427.

"I find that the defendant First State Bank of Elgin, in equity and good conscience, is not entitled to retain the money to which the plaintiffs assert a claim. Thus the bank is not entitled to retain the sum of $10,190.80, which the bank received from United States by check dated April 19, 1976.

"The bank is claiming that it is entitled to retain the funds because at the time it had a valid assignment from Air Service to the bank of the proceeds due under Contract No. 004329S. However, at the time the bank received the check from United States, it was aware of the following: (1) that the check was sent to the bank as a result of United States receiving from Air Service a notice that Air Service had assigned to the bank its right to the proceeds under Contract No. 004329S; (2) that Air Service's only right to the funds under Contract No. 004329S was for rental of the airplane; (3) that Air Service had sold all of its right, title and interest in the airplane in September 1975 and would not therefore be entitled to receipt of the rental payment due for use of the airplane in March and April of 1976 under Contract No. 004329S; (4) that the loan to Air Service by the bank for purchase of the airplane had been paid in full and the bank had released its security interest in the airplane; (5) that the bank did not notify United States that Air Service had paid the indebtedness in full and that the bank was not therefore entitled to these proceeds under the assignment; (6) that the bank, by the terms of its assignment with Air Service, had an affirmative obligation to notify United States that it was no longer entitled to receipt of the proceeds from the contract; and (7) that plaintiffs were claiming an interest in the monies due under the contract with United States for use of the airplane during March and April of 1976.

"It is inconceivable that the bank could have thought that Air Service was entitled to the rental proceeds due

[ 128 ]

under the contract with United States for work and service performed by the airplane after it was sold by Air Service. The bank, as assignee from Air Service, was in no better position than Air Service. It is no justification for Glenn Kirkeby to say that he followed the direction of Mr. Mitchell, executive officer of Air Service, in dispersal of the $10,190.80. As noted, he knew that Mr. Mitchell and Air Service had no right whatsoever to the funds. It is also interesting to note that Mr. Kirkeby indicated that he felt that he was entitled to the funds because of the assignment from Air Service, and yet at the same time he stated he was following the directions of Air Service in the manner in which the funds were to be dispersed. The action taken by the bank appears to be a wrongful attempt to get repaid on other loans to Mr. Mitchell and Air Service, at the expense of plaintiffs. The evidence in the case indicated that Mr. Mitchell and Air Service are not able to pay its obligations. There appears to be no impropriety on the part of United States, who sent the check due under Contract No. 004329S in accordance with the notice to it. The impropriety was in the bank not notifying United States that it was no longer entitled to the proceeds under the contract and thereafter negotiating the check to its benefit.

"Defendant First State Bank of Elgin argues that because plaintiffs did not make the payment to defendant bank, plaintiffs are not entitled to recover in an action for money had and received. However, in the case of *Smith v. Rubel, supra,* it is noted at page 428:

" 'The defendant, after pointing out that he did not appoint Pierce & Company his agents, argues that, therefore, no privity existed between him and the plaintiff's assignors. However, privity of the contractual type need not exist between the parties. Either express or implied privity will suffice. The equitable principle that one who possesses money which ex equo et bono belongs to another should return it, in the absence of a contract modifying the general liability, implies the promise to return which, in turn, supplies the privity. (Citations omitted.) Thus, the needed promise to create the privity is present in the case under consideration.'

"In 66 Am Jur 2d 1062, Restitution and Implied Contracts, § 130 [1973], it is noted:

" 'According to numerous cases, the general rule as to the recovery of payments made under a mistake of fact does not apply where, as a result of a mistake of the original parties, money is paid by one of them on account of the other to a third person (directly or through the intervention of the other), who receives the money in good faith without knowledge of the mistake, in payment of a claim by him against the latter. In such case, according to the greatly prevailing view, no recovery may be had against such third person. This rule applies with stronger force where the payee (the defendant) has changed his position in reliance upon the payment, as where he has discharged the debt and the securities held therefor, or has settled his accounts with his debtor, or his debtor has been declared insolvent, since in such case there could be no recovery even as between the original parties, such change of defendant's position creating an exception to the general rule that money paid under a mistake of fact may be recovered back.
" '* * * * *

" 'However, if the person receiving the payment knows of the mistake and induces the payment, he is not entitled to retain the money.'

"In this case, any change of the position made by the bank as a result of the receipt of the check in the amount of $10,190.80 was not made in good faith. The bank, as noted above, knew of the mistake. It induced the mistake and the subsequent payment by not canceling the assignment under Contract No. 004329S before payment was made by United States. The bank did finally notify United States to cancel the assignment on June 29, 1976. Thus, defendant bank is not entitled to retain the monies in question even though not paid by plaintiffs and despite the fact that the bank may have changed its position after receipt of the monies.
"* * * * *

"Thus this Court finds that plaintiffs are entitled to a judgment against defendant First State Bank of Elgin in the amount of $10,190.80. * * *'"

■ The judgment of the trial court is affirmed.[1]

[1]The "implied promise to return" referred to in the quotation by the trial court from *Smith v. Rubel,* 140 Or 422, 426, 428, 13 P2d 1078 (1932), as the basis for this action for money had and received was originally a fiction invented to satisfy the technical requirements of the old English forms of pleading. *See* Dobbs, Handbook on the Law of Remedies § 4.2 (1973). Today, when such a fiction is not needed, the action may be explained on other grounds than a supposed promise directly contrary to the defendant's actual intentions. The obligation arises because the defendant has received money under circumstances when it should not have been paid to him or should have been paid to someone else and it would be "unjust enrichment" for him to retain the money. *See Golden v. Golden,* 273 Or 506, 511, 541 P2d 1397 (1975), and *Albino v. Albino,* 279 Or 537, 553, 568 P2d 1344 (1977). *See also Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 557, 577 P2d 477 (1978).

Indeed, in *Smith v. Rubel, supra* at 426, this court also stated that:

"* * * The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. * * *"