Argued and submitted October 12, 1984, affirmed in part, reversed in part, and remanded January 9, reconsideration denied February 22, petition for review denied March 19, 1985 (298 Or 822)

DUTY,
*Appellant,*

*v.*

FIRST STATE BANK OF OREGON,
*Respondent.*

DUTY,
*Respondent - Cross-Appellant, Appellant.*

*v.*

FIRST STATE BANK OF OREGON,
*Respondent,*
DON FRANK CO., INC.,
*Appellant - Cross-Respondent.*
(A8012-06790; CA A28186)

693 P2d 1308

Theodore S. Bloom, Portland, argued the cause for appellant, respondent, cross-appellant Joyce Duty. With him on the briefs were Michael H. Bloom, and Bloom, Marandas & Sly, Portland.

Marvin S. Nepom, Portland, argued the cause and filed the briefs for appellant - cross-respondent Don Frank Co., Inc.

J. P. Graff, Portland, argued the cause for respondent First State Bank of Oregon. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action to recover $50,427, which she claims is due her as named beneficiary on a policy insuring her late husband Don Duty's life. Her husband had asssigned the policy as collateral security to the Community Bank (predecessor in interest to defendant First State Bank of Oregon, hereinafter referred to as Bank), which received the proceeds. Plaintiff claims that Bank misapplied the proceeds and that it and the other defendants, Don Frank Co., Inc. (Company) and James Duty, secretary-treasurer of Company, are liable to her for conversion and money had and received. In addition, plaintiff sought to be subrogated to Bank's rights, if any, against Company for the improper application of the funds. Plaintiff was awarded a judgment for the full amount against Company. Company appeals from the judgment. Plaintiff cross-appeals the denial of punitive damages in that judgment. The claims against Bank and James Duty were dismissed on defendants' motions. Plaintiff appeals from the dismissal of her claims against Bank only.

Company applied for a $100,000 loan from Bank to be guaranteed by the United States Small Business Administration (SBA). SBA approved the loan guaranty, and its loan agreement required Company to provide as collateral for the loan, in addition to other security, the personal guaranties of Company's president Don Duty and James Duty and an assignment of life insurance in the amount of $100,000 on the life of Don Duty. The latter requirement was amended by SBA to an assignment of life insurance in the amount of $50,000 on the life of Don Duty and $50,000 on the life of James Duty.

To meet SBA's requirement of life insurance, Company obtained a group policy insuring all of its employes. The beneficiary under the group policy could not be a corporation, but the insured could absolutely assign ownership of the rights, benefits and proceeds of the insurance to anyone except Company, the policyholder. Don and James Duty each named his wife as beneficiary.

Don Duty personally guaranteed the payment of Company's debt to Bank. The SBA guaranty form which he signed stated:

"As security for the performance of this guaranty the

Undersigned hereby mortgages, pledges, assigns, transfers and delivers to Lender certain collateral (if any), listed in the schedule on the reverse side hereof."

The reverse side of the document is blank.

Don Duty also signed a document entitled "Assignment of Policy as Collateral Security," in which he assigned to Bank certain of his rights in the policy which insured his life. One of the rights assigned was:

"The sole right to collect from the Insurer such part of the net proceeds of the policy, when it becomes a claim by death or maturity, as may be required for the satisfaction of all indebtedness which is secured by the assignment of the said policy and to collect any disability income, unless this right be waived by the Assignee in writing."

Don Duty reserved the right to designate and change the beneficiary. The assignment further provided:

"This assignment is made and the policy is to be held as collateral security for the payment of any and all liabilities of the undersigned or any of them to the Assignee now or hereafter owing, however the same may be evidenced and in whatever form they may be, whether such liabilities be absolute or conditional, primary or secondary (all of which liabilities secured or to become secured are herein called 'liabilities'). * * * It is expressly agreed that all sums received by the Assignee hereunder, either in the event of death of the insured, the maturity or surrender of the policy, the obtaining of a loan or advance on the policy, or otherwise, shall first be applied to the payment of one or more of the following in such order of preference as the Assignee shall determine: (a) principal of and/or interest on liabilities; (b) premiums on the policy; (c) principal of and/or interest on loans or advances made by the Insurer on the policy.

"E. The Assignee covenants and agrees with the undersigned as follows:

"1. If the Assignee shall receive any sum in excess of the absolute and primary indebtedness owing to it by the undersigned and thereafter the amount of the secondary or contingent indebtedness shall be reduced by payment by the primary obligor or the failure of the condition or otherwise, by reason of which the assignee shall hold funds realized from the policy in excess of the amount required for the satisfaction of the liabilities hereby secured, the Assignee shall pay in one sum to the person then entitled to receive payments then

currently payable under the terms of said policy the amount of such overplus as may then be in its hands."

This document also was signed by plaintiff, Don Duty's wife.

At trial, plaintiff and defendants Company and James Duty stipulated that Don Duty intended to assign the policy as security for Company's debt to Bank. Although SBA required an assignment of the policy as collateral securing the loan to Company, we do not conclude that the assignment had that effect. The policy was assigned as collateral securing the liability of Don to Bank. Bank's loan was to Company; Don signed the note as president of the corporation and was not personally liable on the note. The only personal liability of Don to Bank that the assignment of the policy could secure was his contingent liability as guarantor of Company's debt. That is how the trial court construed the assignment and, despite the parties' stipulation, we think that there was evidence to support that conclusion.

The insurer did not recognize this form of assignment, indicating that it could accept only an "absolute assignment." Although the insurance agent received an acceptable assignment form for Don to complete, there is no evidence that he executed an absolute assignment.

When Don died on December 25, 1978, the insurer issued a check in the amount of $50,427, payable to Joyce Duty, the named beneficiary, which was mailed to its agent. James Duty, as executor of Don Duty's estate, instructed Joyce to go to the insurance agent's office to sign a document relating to the check. She signed a document as "Joyce Duty, wife," directing payment of the policy proceeds to Bank "as lienholder for the Don Frank Company, Inc." She testified that, at the time, she was not aware what the insurance was for or that she was the beneficiary of the policy.

Pursuant to that instruction, the insurer issued a substitute check payable to Bank. With the approval of SBA, Bank and Company agreed that the proceeds

"* * * will be injected into the company in the form of capital surplus and in no manner can be construed as a loan to the company.

"This agreement is given in consideration to the Bank and the Small Business Administration for the injection of these

funds as working capital rather than reducing the indebtedness of the Don Frank Company."

The funds were disbursed to Company, and it is this application of the proceeds of which plaintiff complains.

■ Plaintiff alleged in her complaint and argues on appeal that the funds should have been applied by Bank "to reduce the indebtedness of defendant Company as provided in the collateral assignment." She also claims that she should be subrogated to the rights of Bank against Company as if the proceeds had been applied in accordance with her husband's guaranty to reduce Company's debt. Plaintiff incorporated a copy of the collateral security assignment of the policy in her complaint, and the court construed the assignment as security for Don's guaranty and not for Company's debt. The trial court's letter opinion reads:

"I am of the opinion that the plaintiff, Joyce Duty is entitled to prevail in this case for the following reasons:

"1.   While it was probably the original intention of Don Duty to name Don Frank Co. the beneficiary of the policy on his life, that designation was not acceptable to the insurer so he named Joyce Duty as beneficiary. Despite all the expert advice apparently available, Don Duty did not simply assign the policy to Don Frank Co. for reassignment to the Bank as additional security for a loan to Don Frank Co. as could have been done if that was his true intention.[1]

"2.   The only assignment of the life insurance policy made by Don Duty was to the Community Bank. A reading of Exhibits 1 and 10, the two assignment forms, show no reference to the assignment as security for loan to Don Frank Co. Accordingly, I must construe the assignment as one for additional security for the contingent personal liability of Don Duty as a guarantor of the debt of Don Frank Co.

"If Don Duty had paid the debt of Don Frank Co. by virtue of his guaranty he would have been subrogated to Bank's rights to the extent of his payment.

"Upon the death of Don Duty, Joyce Duty was entitled to the insurance proceeds subject to the assignment for the purpose stated above. If Bank had actually applied the insurance proceeds to Don Frank Co.'s debt it is clear that Joyce

---

[1]As noted above, the terms of the group policy forbade its assignment to Company, but not an absolute assignment to Bank.

Duty would likewise be subrogated to Bank's rights in the debt.

"Bank did not apply the insurance proceeds to Don Frank Co.'s debt but merely paid the money over to Don Frank Co.

"If another judge of this court had not already granted a final summary judgment in favor of Bank, I would give a judgment against both Bank and Don Frank Co. Under the circumstances, judgment may only be given against Don Frank Co. for the sum of $50,427 together with interest from March 1, 1979 or whatever date the money was received by Don Frank Co.

"No punitive damage is allowed."

We think that the language of the assignment is evidence sufficient to support the court's holding that the policy secured Don Duty's contingent personal liability as guarantor, and we analyze the case with this understanding.

Company appeals from the judgment and contends in its first assignment that the court erred in denying its motion for a directed verdict on plaintiff's claim for money had and received. It argues that, because of decedent's assignment of the policy to Bank, plaintiff did not have a property interest in the proceeds sufficient to state a claim for relief.

The beneficiary of a life insurance policy in which the insured reserves the right to assign the policy or to change the beneficiary does not have a vested interest in the proceeds before the death of the insured. In this case, when Don Duty died, plaintiff's rights as beneficiary vested, subject to the assignment for security. As stated in *Males v. N Y Life Ins Co*, 48 AD2d 50, 53, 367 NYS2d 575 (1975):

"* * * [A]n assignment of an insurance policy as collateral security does not divest the insured or the beneficiary of their general interest in the policy, but merely creates a lien in favor of the assignee to the extent of the debt owed. Once the debt has been paid, the insurance policy continues in effect as if there had been no assignment. * * *"

Pursuant to the assignment, Bank had a lien on the proceeds which it held to secure the potential liability of Don Duty's estate under his guaranty.[2] His liability as guarantor

---

[2] In the guaranty, Don Duty agreed that his liability would continue after his death.

could not ripen unless the primary obligor, Company, were to default on its obligations. When Bank received the proceeds, Company was current in its payments. Bank's obligation was to hold the proceeds as security for the contingent liability of Don's estate and in trust for plaintiff who, as beneficiary, would be entitled to the proceeds in the event Company paid off the debt, relieving the guarantor of liability. In these circumstances, plaintiff had an interest in the proceeds sufficient to maintain an action for money had and received. *Cf. Austin v. Vanderbilt,* 48 Or 206, 85 P 519 (1906) (pledgor has sufficient ownership interest in pledge to maintain suit against pledgee for conversion).

> "An action for money had and received, although an action at law, is governed by equitable principles. [Citations omitted.] The action is liberal in form and greatly favored by the courts. [Citation omitted.] The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. * * *"
> *Smith v. Rubel,* 140 Or 422, 426, 13 P2d 1078 (1932).

*See also Rosenblum v. First State Bank of Elgin,* 283 Or 123, 581 P2d 515 (1978).

Company received the money which Bank should have held in trust for plaintiff's benefit. Company was not entitled, in equity and good conscience, to retain the money, and the court did not err in denying its motion for a directed verdict on the money had and received claim.

■     Company's second assignment contends that the court erred in denying its motion for a directed verdict on plaintiff's claim for conversion. We have disposed of the first ground asserted, that plaintiff did not have an interest in the proceeds sufficient to assert this claim. Company argues additionally that conversion is not proper when money is the property converted, unless it is specifically earmarked or otherwise capable of identification.

The Supreme Court stated in *Waggoner v. Haralampus,* 277 Or 601, 604, 561 P2d 586 (1977):

> "The general rule is that conversion will lie when the money was wrongfully received by the party charged with conversion, *or* an agent is obligated to return specific money

to the party claiming it. * * *" (Emphasis supplied; citations omitted.)

In this case, the money was wrongfully received by Company, which had no claim to the funds that Bank was supposed to hold in trust. Because Company wrongfully received the money, we need not decide whether it was obligated to return "specific money." *See also Wood Ind'l Corp. v. Rose,* 271 Or 103, 530 P2d 1245 (1975). The court did not err in denying Company's motion for a directed verdict on the claim for conversion.

■    Company assigns as a third error the court's denying its motion for a directed verdict on plaintiff's claim for subrogation to Bank's rights against Company. If the insurance proceeds had been applied to Company's debt in fulfillment of Don Duty's guaranty, his estate would be entitled to be subrogated; plaintiff, who is not shown by the record to be personal representative of the estate, would not have this right. Moreover, the proceeds were not applied to Company's debt, and no right of subrogation arose in favor of any party. Hence, the court erred in denying Company's motion; however, the error was not prejudicial to Company.

The trial court's opinion reads:

"If Don Duty had paid the debt of Don Frank Co. by virtue of his guaranty he would have been subrogated to Bank's rights to the extent of his payment.

"Upon the death of Don Duty, Joyce Duty was entitled to the insurance proceeds subject to the assignment for the purpose stated above. If Bank had actually applied the insurance proceeds to Don Frank Co.'s debt it is clear that Joyce Duty would likewise be subrogated to Bank's rights in the debt.

"Bank did not apply the insurance proceeds to Don Frank Co.'s debt but merely paid the money over to Don Frank Co."

By holding that plaintiff's rights to subrogation were conditioned on Bank's applying the proceeds to reduce Company's debt and then finding that the proceeds were not so applied, the court implicitly denied plaintiff's claim for subrogation. Although the court erred in denying Company a directed verdict, the error was not prejudicial, because the court ultimately decided the claim in Company's favor. *Grover v. Sturgeon,* 255 Or 578, 469 P2d 617 (1970); *Gabriel v. Collier,* 146 Or 247, 29 P2d 1025 (1934).

■    Company finally argues that the court erred in finding in favor of plaintiff, because the policy was an asset of Company, which had paid the premiums. In *Gas-Ice Corporation v. Newbern,* 263 Or 227, 501 P2d 1288 (1972), the corporation took out a policy of insurance on its president's life and paid the premiums. The policy was purchased for the purpose of corporate stability, to make its bonds more attractive, and the corporation was named as beneficiary. After all the premiums had been paid, the president made his wife the beneficiary and left the corporation. In that case, the court wrote:

"* * * [I]f funds of the corporation are used to pay for such property it will ordinarily be considered to be an asset of the corporation, under the theory of an implied trust for its benefit. [Citations omitted.]

"In our view, this rule is applicable to a policy of insurance on the life of the officer of a corporation for which the premiums are paid by the corporation, with the result that such an insurance policy is an asset of the corporation, at least in the absence of satisfactory evidence that the directors or trustees of the corporation authorized or approved of some arrangement to the contrary. * * *" 263 Or at 236.

The circumstances of this case are sufficiently distinguishable from those of *Gas-Ice Corporation v. Newbern, supra,* to support a finding that this policy was not a corporate asset. The insurance policy here was security for Don Duty's guaranty and benefited him directly and the corporation only indirectly. Joyce Duty was named as beneficiary from the policy's inception, and that designation was not changed. Moreover, by the terms of the policy, a corporation could not be named as beneficiary, nor could the policy be assigned to Company. These facts provide satisfactory evidence that, by approving this policy, Company authorized an arrangement in which the policy was not considered an asset of the corporation. We find no reversible error in any of Company's assignments and affirm the judgment against it.

■    In her cross-appeal against Company, plaintiff claims that the court erred in finding that she was not entitled to punitive damages. The assessment of punitive damages is within the discretion of the factfinder, and their denial is not reviewable as a question of law.

"* * * [T]he jury has entire discretion to refrain from giving any punitive damages at all even though all the elements of

malicious and damaging misconduct may have been established. * * *" *Van Lom v. Schneiderman,* 187 Or 89, 108, 210 P2d 461 (1949).

ORCP 62F provides that in trials without a jury the findings of the court are as conclusive as the verdict of a jury. The decision whether to award punitive damages was within the discretion of the court; there was no error in their denial.

■    Plaintiff also appeals from the judgment in favor of Bank, assigning as errors the court's dismissing her claims for money had and received and conversion and its granting judgment on the pleadings on her claim for subrogation to Bank's rights against Company. Bank argues first that we should decline to review plaintiff's assignments of error for her failure to comply with ORAP 7.19. We conclude that plaintiff complied substantially with the rule. It is not necessary for us to "search the record" to discover the proceedings complained of, and we may proceed to consider her assignments of error.

■    Plaintiff argues that the court erred in dismissing her claims against Bank for conversion and money had and received under ORCP 21A(8) for failure to state ultimate facts sufficient to constitute claims for relief. Bank first contends that the policy proceeds were assigned to it as security for Company's debt and, because the debt exceeded the proceeds, plaintiff has no interest in the proceeds which may support her claims. We have dismissed the similar argument made by Company and we hold that, because the policy was assigned to secure Don Duty's contingent liability, plaintiff, as beneficiary, has a sufficient interest in the proceeds to maintain this action.

■    In determining whether an action for money had and received is appropriate, "[t]he test is whether a defendant, in equity and good conscience, is entitled to keep money to which a plaintiff makes a claim." *Davis v. Tyee Industries, Inc.,* 58 Or App 292, 296, 648 P2d 388 (1982), *affirmed* 295 Or 467, 668 P2d 1186 (1983); *see also Rosenblum v. First State Bank of Elgin, supra.* In this case, Bank did not retain the proceeds for the limited purpose for which it was entitled to retain them, but turned them over to Company. Because Bank did not retain the proceeds, an action for money had and received is not appropriate against Bank. The court did not err in dismissing this claim.

██     The result is different with regard to plaintiff's claim for conversion. The Supreme Court stated the following rule in *Craven v. Wright,* 114 Or 692, 693-94, 236 P 1043 (1925):

> "Where a check has been given to a person for one purpose and it has been diverted to a purpose different from that for which it was given, an action in trover may be maintained by the maker thereof for the conversion of the money paid thereon: Bowers on Conversion, § 19. * * *"

Although plaintiff was not the maker of the check payable to Bank, the insurer issued the check to Bank at plaintiff's direction and as a substitute for the check which it had issued to her. Bank received the check for the proceeds as lienholder and should have held the fund, as trustee for plaintiff, to secure the contingent liability of Don Duty's estate as guarantor of Company's debt. Instead of so holding it, Bank released the fund to Company with no obligation on Company's part to repay it. In these circumstances, plaintiff did state a claim for conversion.

Bank contends that money is not a proper object in an action for conversion unless the defendant is obliged to return specific money to the plaintiff, citing *Wood Ind'l Corp. v. Rose, supra.* In this case, there is a specific fund, the insurance proceeds, which Bank was obliged to hold in trust as security for Don Duty's guaranty and to deliver to plaintiff when the need for that security expired. By failing to hold the money in trust and turning it over to Company instead, Bank converted a specific fund. Plaintiff stated a claim for conversion, and the court erred in dismissing the claim. *Allen v. Allen,* 275 Or 471, 551 P2d 459 (1976).

Plaintiff contends in her third assignment that the court erred in granting Bank judgment on the pleadings as to her claim for subrogation to Bank's rights against Company. As we have stated above, no subrogation rights in favor of plaintiff arose, because the proceeds were not applied to reduce Company's debt. The court did not err in granting Bank judgment on the pleadings as to this claim.

The judgment is affirmed as to the award of damages against Company, the denial of punitive damages to plaintiff against Company and the dismissal of the claims against Bank for money had and received and subrogation.

Judgment dismissing the claim against Bank for conversion is reversed and remanded for further proceedings. Otherwise, the judgment is affirmed on the appeal and the cross-appeal.