**NACIONAL FINANCIERA, S.N.C., Plaintiff,**

**v.**

**AMERICOM AIRLEASE, INC., Defendant.**

**No. 91 Civ. 3244 (MGC).**

United States District Court, S.D. New York.

Oct. 14, 1992.

Walter, Conston, Alexander & Green, P.C. by Franz S. Leichter and Stephen S. Hart, New York City, for plaintiff Nacional Financiera, S.N.C.

Cadwalader, Wickersham & Taft by Michael G. Dolan and Curtis Sykes, New York City, for defendant Americom Airlease, Inc.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Nacional Financiera, S.N.C. ("Nafinsa"), an industrial development bank and instrumentality of the Mexican government, seeks a declaratory judgment that it is not liable to a Delaware corporation, Americom Airlease, Inc. ("Americom") for attorneys' fees and expenses exceeding $666,000. Americom and its lender PacifiCorp Credit, Inc. ("PacifiCorp"), an Oregon-based finance company, incurred these attorneys' fees and expenses in attempting to secure

the return of an aircraft which was the subject of a lease guaranteed by Nafinsa and assigned by Americom to PacifiCorp. Americom counterclaims for these attorneys' fees and expenses, as well as those that it continues to incur in this proceeding, and moves for summary judgment on the counterclaim. Nafinsa cross moves for summary judgment declaring its non-liability to Americom.

Both sides agree that the lease entitled PacifiCorp to reimbursement for its attorneys' fees and expenses incurred during the period in which it was the assignee of the lease. The issues in this case are whether Americom is also entitled to reimbursement for attorneys' fees and expenses incurred by it during the assignment period, and whether Americom is entitled to recover the attorneys' fees and expenses of PacifiCorp which Americom paid under its indemnity contract with PacifiCorp.

### THE FACTS

The following facts are undisputed.

In 1974, National Aircraft Leasing, Ltd. ("NAL") leased a McDonnell Douglas aircraft to Aeronaves de Mexico, S.A. de C.V. ("Aeronaves") for a 15 year period ending in May of 1989. In a separate guarantee, Nafinsa unconditionally guaranteed Aeronaves' obligations under the lease, including the obligation to pay all "Rent" as defined in the lease.

Maple Leaf Leasing Ltd, a Canadian corporation affiliated with NAL, later acquired the aircraft and NAL's rights under the lease as lessor of the aircraft. In 1986, Americom purchased the aircraft from Maple Leaf and acquired Maple Leaf's rights under the lease.

To finance the transaction, Americom borrowed $24,500,000 from PacifiCorp. As security for the loan, Americom mortgaged the aircraft and assigned to PacifiCorp "[a]ll right, title and interest of Lessor in the Lease ... together with the Guaranty of such Lease by Nacional Financiera, S.A...." (Hart Aff.Ex. 1.) Americom also agreed to pay any attorneys' fees and expenses incurred by PacifiCorp in enforc-

ing its rights under the lease. (Ault Aff. ¶ 5.) Subsequent to the assignment, rent under the lease was paid directly by Aeronaves to PacifiCorp. (Hart Aff. Ex. 2 (Ault Dep.).)

In April 1988, Aeronaves filed for bankruptcy in Mexico. The Mexican Bankruptcy Court appointed Banco Nacional de Obros y Servicios Publicos, S.N.C. ("Banobras") as trustee for Aeronaves. Americom and PacifiCorp jointly engaged Mexican counsel and commenced a proceeding in the Mexican Bankruptcy Court to separate the aircraft from the other assets of Aeronaves so that other creditors could not reach it. Banobras also commenced an ancillary proceeding in the United States Bankruptcy Court for the Southern District of New York. Americom and PacifiCorp retained separate counsel to represent their interests in that action.

In September 1988, Americom agreed to allow Banobras to sublease the aircraft to Aerovias de Mexico, S.A., de C.V. ("Aerovias") for a period of two months. Aerovias was a Mexican airline organized to carry out the air service previously performed by Aeronaves. Americom refused to agree to an extension of the sublease when it expired in November 1988. Despite Americom's refusal, Banobras continued to operate the aircraft. (Ault Aff. ¶ 20.) Americom then initiated an adversary proceeding in the United States Bankruptcy Court.

Following extensive negotiations, Americom reached a settlement with Banobras in March 1989. Pursuant to the Aircraft Purchase and Settlement Agreement (the "Settlement Agreement"), Americom agreed to adjourn the litigation commenced in the Mexican and United States bankruptcy courts pending the sale or return of the aircraft. PacifiCorp was not a party to the Settlement Agreement, but was required to release its claims against Banobras in the Mexican and United States bankruptcy proceedings. (Ault Aff.Ex. 15 § 4.2(b).)

On May 4, 1989 the aircraft was sold to Polaris Holding Company, a designee of Banobras.

Pursuant to its indemnity obligation to PacifiCorp under the financing agreement,

Americom has reimbursed PacifiCorp for attorneys' fees and expenses incurred by PacifiCorp in connection with the above events. Americom has also engaged its own lawyers and incurred attorneys' fees and expenses on its own account in relation to these events, and in connection with this declaratory judgment action.

The lease provides that " 'Rent' shall mean Basic Rent and Supplemental Rent, collectively." (Ault Aff.Ex. 4 art. 1.19.) Basic Rent is the "aggregate rent payable throughout the term for each of the Aircraft and Spare Engine pursuant to Article 4(a) [of the lease] and any other amounts treated as rent payable under said Article 4(a) pursuant to any other provisions of the Lease." (*Id.* Ex. 4 art. 1.4.) The lease provides that Supplemental Rent is:

> all amounts, liabilities and obligations (other than Basic Rent) which Lessee assumes or agrees to pay hereunder to Lessor or others, including, without limitation, (i) Stipulated Loss Value payments, (ii) all amounts required to be paid by Lessee under the agreements, covenants and indemnities contained in this Lease and (iii) any and all liabilities, obligations, losses, damages, penalties, taxes, claims, actions, suits, costs, expenses or disbursements (including legal fees and expenses) of any kind and nature whatsoever which may be imposed upon, incurred by or asserted against Lessor by reason of the failure of the Lessee to duly perform its obligations under this Lease.

(*Id.* Ex. 4 art. 1.23.)

The guaranty provides that "[i]f Lessee fails to pay any Rent, Guarantor will immediately pay to Lessor an amount equal to such Rent and all damages resulting therefrom, including all reasonable expenses incurred in enforcing the same." (Ault Aff. Ex. 5.)

The parties agree that the lease and guarantee should be interpreted under California law. Plaintiff contends, and defendant does not object, that the assignment of the lease to PacifiCorp is governed by Oregon law.

## DISCUSSION

A motion for summary judgment will be granted under Fed.R.Civ.P. 56 if the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). Because the facts underlying this dispute are uncontested, this is an appropriate case for summary judgment.

1. *Attorneys' fees incurred by Americom*

■ Nafinsa argues that when Americom assigned the entire lease to PacifiCorp as collateral for the loan, Americom transferred to PacifiCorp all rights of the lessor including the right to receive reimbursement of attorneys' fees and expenses as Supplemental Rent. Nafinsa stresses that there is nothing in the language of the assignment to suggest that the lessor's right to receive rent did not include Supplemental Rent; and there is nothing in the language of the lease which shows that the parties intended to treat the lessor's right to Supplemental Rent differently from lessor's right to receive Basic Rent.

Americom contends that because it assigned the lease to PacifiCorp as security for a loan, it continued to have rights under the lease and guaranty simultaneously with the rights enjoyed by PacifiCorp during the assignment term. In support of this contention, Americom cites a number of cases which hold that an assignor of property as security retains an interest in the subject of the assignment. In *Duty v. First State Bank,* 71 Or.App. 611, 617, 693 P.2d 1308 (1985), *review denied,* 298 Or. 822, 698 P.2d 963 (1985) a corporate officer personally guaranteed bank debt the company had incurred, and assigned to the bank a life insurance policy as security for performance of the guaranty. The assignment provided that any funds received in excess of the amount required for satisfaction of the company's liability should be held in trust for the plaintiff, the named beneficiary under the policy. When the bank received proceeds under the policy, the company was not in default on its loan, and therefore the bank's obligation was to hold the proceeds as security for the contingent liability of the deceased guarantor's estate

and in trust for plaintiff. Instead, the bank paid the proceeds directly to the company. The court determined that the plaintiff had an interest in the proceeds sufficient to maintain an action against the bank. In *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 44 A.D.2d 887, 355 N.Y.S.2d 856 (4th Dep't 1974), the plaintiff, owner of a parking lot, mortgaged the parking lot and assigned the lease covering the parking lot as security for a loan received from a finance company. The court explained that where the underlying debt was approximately $200,000 and the claim for unpaid rent was for over $1,000,000, the assignor and assignee were both interested parties, and therefore the plaintiff could maintain an action for the unpaid rent.

These cases illustrate that although an assignment for security does not completely extinguish the assignor's rights in the subject of the assignment, the right the assignor retains is not the right to the obligor's performance during the period of the assignment. As stated in a well-respected treatise:

> The fact that an assignment by a creditor or obligee is given by him "as security" for the performance of some obligation or as "indemnity" against some possible future loss or injury does not in itself make that assignment a "partial assignment".... It is true that, in case of such a total assignment "as security," the grantor or assignor still has an "interest" to be protected; but analysis shows that it is secondary and inferior to that of the assignee. It no longer includes any presently enforceable right to the performance promised by the obligor. It is the assignee alone who has that enforceable right; and it is now the assignee to whom the obligor is legally bound to pay every dollar included in the assignment

.    .    .    .    .

4 Corbin, *Contracts* § 891, at 268–69 (Supp.1992).

Thus, the legal effect of Americom's assignment of the entire lease as collateral is that during the period of the assignment, only the attorneys' fees and expenses incurred by PacifiCorp are reimbursable under the lease.

Furthermore, neither the language of the lease nor the conduct of the parties supports Americom's position that Nafinsa is liable both for Americom's attorneys' fees and expenses and for PacifiCorp's attorneys' fees and expenses incurred during the period of the assignment.

The definition of Supplemental Rent specifically includes attorneys' fees and expenses. Article 4(b) which governs the payment of Supplemental Rent provides that "[l]essee also agrees to pay to Lessor, or to whomsoever shall be entitled thereto, any and all Supplemental Rent promptly as the same shall become due and owing ..." (Ault Aff.Ex. 4 art. 4(b).) Use of the word "or," as well as a reasonable reading of the entire article show that the parties intended only one entity to be paid Supplemental Rent under the lease just as the parties expected only one entity to receive Basic Rent.

Nor does Article 13, the Indemnification Provision, support Americom's contention that the attorneys' fees and expenses incurred by both Americom and PacifiCorp are reimbursable under the lease. Article 13 provides that the lessee is obligated to:

> indemnify, reimburse and hold harmless Lessor and its successors, assigns, agents and servants from and against any and all claims, damages, losses, liabilities, demands, suits, judgments, or causes o[f] action and all legal proceedings, whether civil or criminal, penalties, fines and other sanctions, and any costs and expenses in connection therewith including attorney's fees and expenses ...

(Ault Aff.Ex. 4 art. 13.)

Americom argues that this language suggests that the lessee is obligated to indemnify multiple parties. But "and" often means "or," which is a more reasonable reading of Article 13, especially in light of the following language: "All the indemnities contained in this Article 13 ... are expressly made for the benefit of, and shall be enforceable by Lessor, its successors *or* assigns." (*Id.*) (emphasis added).

■ Americom also argues that certain words in the guaranty establish a basis for holding Nafinsa liable for the attorneys' fees and expenses incurred by both Americom and PacifiCorp. The guaranty provides that it "[s]hall inure to the benefit of and be enforceable by Lessor and its assigns, including any assignee of Lessor's rights to any Rent." (Ault Aff.Ex. 5.) Because the obligations guaranteed are those created by the lease, the guaranty cannot expand the lessee's obligations, but rather must be interpreted by reference to the lease.

Americom further argues that it is entitled to reimbursement for attorneys' fees and expenses under the guaranty because in the guaranty Nafinsa waived the right to maintain any defenses. (Def's Reply Mem. at 9.) The guaranty provides that it "will apply immediately in case of non-payment on the due date by Lessee of whatever sum is then due and payable by it, ... without the benefit of any defenses which Guarantor hereby renounces." Under the terms of the guaranty, Nafinsa is liable only for the rent which the lessee is obligated to pay under the lease. Therefore, Americom is entitled to reimbursement from Nafinsa only if it was entitled to receive rent under the lease during the period in which the fees and expenses were incurred. This provision does not relieve Americom of the burden of proving its entitlement to Supplemental Rent during the assignment period.

Finally, the conduct of the parties subsequent to assignment of the lease supports the conclusion that Nafinsa is not liable for the attorneys' fees incurred by both Americom and PacifiCorp. Unlike Supplemental Rent, which was incurred but not paid during the term of the assignment, Basic Rent was both incurred and paid only to PacifiCorp during this period. PacifiCorp was the sole, and, as both parties agree, the only proper recipient of these rent payments. Americom offers no logical basis for concluding that in spite of the nearly identical language used in the Supplemental and Basic Rent provisions, Americom and PacifiCorp were both entitled to receive Supplemental Rent, but only PacifiCorp was entitled to receive Basic Rent during the period in which the lease was assigned to PacifiCorp.

Because the lease does not entitle Americom to reimbursement of its attorneys' fees and expenses incurred during the lease assignment period, it is unnecessary to address Nafinsa's contention that in a stipulation submitted to the Mexican Bankruptcy Court, Americom relinquished whatever right it had to attorneys' fees and expenses under the lease.

## 2. *Attorneys' Fees Incurred by PacifiCorp*

I turn then to Americom's claim for reimbursement of its payments of PacifiCorp's fees and expenses incurred during the term of the assignment. PacifiCorp is not a party to this action. Both sides concede that under the terms of the lease PacifiCorp was entitled to attorneys' fees and expenses. But Nafinsa contends that Americom is not entitled to recover its payment of PacifiCorp's attorneys' fees and expenses. First, Nafinsa argues that Americom has failed to show a basis in law for asserting PacifiCorp's contractual rights. Secondly, Nafinsa argues that PacifiCorp waived its contractual right to reimbursement.

### *Subrogation*

■ Americom contends that it is entitled to assert the contractual rights of PacifiCorp because under California law, a surety who satisfies the obligation of a principal is entitled to reimbursement from the principal. Cal.Civ.Code §§ 2847, 2848. Nafinsa responds that the California statutes do not support Americom's argument because Americom is not a surety. Even if Americom is not a surety, however, the equitable doctrine of subrogation provides a basis for Americom to assert PacifiCorp's contractual right to reimbursement for the attorneys' fees and expenses incurred by PacifiCorp and paid by Americom. The right of subrogation may arise "where property of one person is used in discharging an obligation owed by another ... under such circumstances that the other

would be unjustly enriched by the retention of the benefit thus conferred ..." Restatement of Restitution § 162 (1937), *accord* 4 *Pomeroy's Equity Jurisprudence* § 1419 (5th ed 1941). California courts have stated that the doctrine of subrogation is available where a party who is not a volunteer pays a debt which in equity and good conscience should have been paid by another. *Mid–States Insurance Co. v. American Fidelity & Casualty Co.*, 234 F.2d 721, 730 (9th Cir.1956); *Stein v. Simpson*, 37 Cal.2d 79, 230 P.2d 816 (1951). The person who actually paid the debt, the subrogee, steps into the shoes of the person paid and acquires his rights against the person whose debt was discharged. *Salzman v. Holiday Inns, Inc.* 48 A.D.2d 258, 369 N.Y.S.2d 238, 243 (4th Dep't 1975), *modified on other grounds,* 40 N.Y.2d 919, 389 N.Y.S.2d 576, 358 N.E.2d 268 (1976). While subrogation is not a matter of strict right, it is a highly favored remedy which is broadly applied. *In re Leonhauser's Will*, 183 Misc. 863, 51 N.Y.S.2d 335 (1944). And subrogation is not confined to cases of suretyship, but is applied when it will achieve equitable results. *In re Lawyers Title & Guaranty Co*, 183 Misc. 294, 50 N.Y.S.2d 257 (1944), *aff'd* 268 A.D. 975, 52 N.Y.S.2d 573 (1944), *aff'd* 294 N.Y. 718, 61 N.E.2d 453 (1945). Nafinsa concedes that PacifiCorp has a contractual right to reimbursement for attorneys' fees and expenses incurred. Americom, as subrogee, may collect from Nafinsa the attorneys' fees and expenses owed PacifiCorp.

### Waiver

Finally, Nafinsa argues that Americom cannot recover its payment of PacifiCorp's attorneys' fees and expenses because PacifiCorp released its claims for attorneys' fees and expenses in both the "Stipulation of Withdrawal in the Mexican Separation Proceedings" ("Stipulation") and in a letter in which PacifiCorp agreed to withdraw all pending litigation in the United States Bankruptcy Court ("Release Letter").

In the Stipulation, both Americom and PacifiCorp agreed that:

> each of the parties shall pay the disbursements and legal expenses that may have been caused by the Action to Terminate the Agreement and the Separation of Goods which was filed by [Americom and PacifiCorp], and that said legal entities, each one, shall bear the damages and consequential damages that said action may have caused.

(Ault Aff.Ex. 16 p. 2.)

The Release Letter provides that:

> PacifiCorp further agrees that upon the transfer of title to the Equipment and receipt of the Mortgagee Payment as such terms are defined in the Agreement, PacifiCorp shall withdraw all pending litigation in the U.S. Bankruptcy Court with prejudice and with each party bearing its own costs in connection therewith.

(Ault Aff.Ex. 15 Ex. C–2.)

The applicable law for the interpretation of both documents is that of Mexico. The Stipulation was submitted to the Mexican Bankruptcy Court on March 16, 1989 to discontinue the Mexican proceeding previously commenced by Americom. Americom was required to deliver the Release Letter to Banobras pursuant to the Settlement Agreement. The Settlement Agreement contains an explicit choice-of-law clause specifying that "[t]his Agreement shall be governed by, and construed in accordance with, the substantive and procedural laws of Mexico, excluding its choice of law principles." (Ault Aff.Ex. 15 ¶ 17.2.) New York courts enforce contractual choice of law provisions provided the law chosen bears a reasonable relationship to the agreement. *Fleischmann Distilling Corp. v. Distillers Co.*, 395 F.Supp. 221, 229 (S.D.N.Y.1975) (citations omitted). Contract negotiations took place in Mexico, and the agreement had to be approved by the Mexican Bankruptcy Court. Thus, the reasonable relationship requirement is met.

Americom has submitted the opinion of its former Mexican counsel that the Stipulation relates only to the Mexican proceeding. This opinion is supported by the clear language of the agreement. PacifiCorp's commitment to pay its own disbursements and legal expenses refers exclusively to that proceeding. Nafinsa offers no basis

for interpreting consequential damages arising from the Mexican proceeding to encompass the attorneys' fees and expenses incurred in an entirely separate proceeding in the United States. Thus, in the Stipulation, PacifiCorp waived only those attorneys' fees and expenses incurred in connection with the Mexican proceeding.

■ In contrast to the waiver contained in the Stipulation, PacifiCorp's Release Letter specifically refers to "costs" incurred in connection with the United States bankruptcy proceeding. Neither Americom nor Nafinsa has provided any authority for interpreting "costs" under Mexican law. In such a situation, the Restatement (Second) of Conflict of Laws calls for the application of the law of the forum: "[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interest of justice." Restatement (Second) of Conflicts of Laws § 136 cmt h at 378–79 (1971), *cited with approval in Scientific Holding Co. v. Plessey Inc.,* 510 F.2d 15, 23 n. 5 (2d Cir.1974). Accordingly, "costs" will be interpreted under New York law.

■ Under New York law, the term "costs" does not include attorneys' fees. *Royal Discount Corp. v. Luxor Motor Sales Corp.,* 9 Misc.2d 307, 308, 170 N.Y.S.2d 382, 383 (1957) ("The terms 'costs' and 'expenses' as employed in the assignment agreement do not include attorney's fees, and attorney's fees are not recoverable in the absence of express language in the contract or statute"); *Atlas Realty, Inc. v. Ostrofsky,* 56 Misc.2d 787, 788, 289 N.Y.S.2d 784, 786 (1967) (citations omitted) (Contract providing for the return of the down payment and "the net costs of examining the title" does not provide for the recovery of attorneys' fees when the seller is unable to convey title). Under federal law as well, the term "costs" does not include attorneys' fees. 28 U.S.C. § 1920 (1991); *Lichtenstein v. Lichtenstein,* 481 F.2d 682, 684 (3d Cir.1973) (citations omitted), *cert denied,* 414 U.S. 1144, 94 S.Ct. 895, 39 L.Ed.2d 98 (1974) ("Attorney's fees are not ordinarily taxable as costs and are awarded only in extraordinary cases."). Since the term "costs" does not include attorneys' fees, PacifiCorp did not waive its right to reimbursement for attorneys' fees and expenses by agreeing to bear its own "costs" in connection with the United States bankruptcy proceeding.

CONCLUSION

For the foregoing reasons, Americom's motion for summary judgment is granted with respect to the attorneys' fees and expenses of PacifiCorp in the United States bankruptcy proceeding which were paid by Americom, and is denied with respect to Americom's own attorneys' fees and expenses incurred during the lease assignment period. Nafinsa's cross-motion is granted to the extent that Nafinsa is declared not liable for attorneys' fees and expenses incurred by Americom during the lease assignment period, and is denied with respect to PacifiCorp's attorneys' fees and expenses in the United States bankruptcy proceeding.

Settle order on two-days' notice.

SO ORDERED.